## Charles Murphy's Case.

No. 00-P-454.

Suffolk. November 2, 2001. - February 4, 2002.

Present: Perretta, Duffly, & Green, JJ.

*Statute,* Construction. *Workers' Compensation Act,* Fraud, Reimbursement of insurer, Attorney's fees.

Certain actions of an employee injured while working in Massachusetts as an airline baggage handler who, while working as a corrections officer in New Hampshire, filed for, and began collecting, workers' compensation benefits for a temporary total disability under G. L. c. 152, § 34, of the workers' compensation act, did not constitute fraud within the meaning of § 14(2) of the act, where the employee did not participate in the creation of evidence he knew to be false within the meaning of § 14(2). [712-715]

An administrative judge within the Department of Industrial Accidents had the authority under G. L. c. 152, § 11D(3), of the workers' compensation act, to order recoupment of benefit overpayments within a proceeding to modify or discontinue benefits without the need for a separate complaint having to be filed by the insurer pursuant to §§ 10 and 11D(3). [715-717]

The reviewing board of the Department of Industrial Accidents correctly ordered an insurer, which had initiated an action to discontinue benefits and then subsequently appealed from an administrative judge's conference order, to pay an employee's attorney's fees, where G. L. c. 152, § 13A(5), of the workers' compensation act required payment of the employee's attorney's fees when the employee successfully defended against the insurer's request for discontinuance of benefits. [717]

Appeal from a decision of the Industrial Accident Reviewing Board.

The case was heard in the Appeals Court by *Kass,* J.

*Richard W. Jensen* for the insurer.

*William N. Batty, Jr.,* for the employee.

Green, J. Charles Murphy (employee) injured his shoulder on Tuesday, September 18, 1990, while working in Massachusetts for Trans World Airlines (TWA) as an airline baggage handler. Three days later, on September 21, 1990, the employee began a

job as a corrections officer with the New Hampshire Department of Corrections. While still working as a corrections officer in New Hampshire, the employee filed for, and began collecting, workers' compensation benefits for a temporary total disability, under § 34 of the Workers' Compensation Act, G. L. c. 152 (Act). This appeal raises the question whether certain of the employee's actions constitute fraud within the meaning of § 14(2) of the Act. We also consider the scope of the authority of an administrative judge of the Department of Industrial Accidents (department) to order recoupment of benefit overpayments within a proceeding to modify or discontinue benefits.

*Background.* The employer's insurer, Continental Insurance Company (insurer), voluntarily placed the employee on temporary total disability compensation shortly following his September, 1990, injury, but after he had begun employment as a corrections officer. The employee did not at that time reveal to the insurer his employment as a New Hampshire corrections officer. The employee was fired from his New Hampshire job on May 28, 1991, for reasons not relevant to this appeal. In November, 1991, TWA learned of the employee's New Hampshire job and terminated his employment. On March 10, 1993, the insurer filed a discontinuance request with the department, pursuant to § 10 of the Act. The parties appeared before the administrative judge on August 2, 1993, for a conference as prescribed by § 10A, at which the employee acknowledged his (then previous) corrections employment. The parties did not reach agreement on an appropriate level of compensation benefits at the conference, and the administrative judge entered a conference order awarding the employee partial incapacity benefits of $400 per week.

The insurer appealed the conference order, seeking a total discontinuance of benefits and sanctions pursuant to § 14(2). A hearing on the appeal was held before the administrative judge on May 31, 1994. Prior to the hearing, in January, 1994, an impartial medical examiner examined the employee, as provided in § 11A of the Act. The examiner's report, which was entered in evidence at the hearing before the administrative judge, concluded that the employee was partially disabled as a result of his work-related injury. The examiner's report also included the following statement:

"[The employee] believes that he will not be able to do the work that he did prior to the episode. At the present time the patient is not employed, having stopped work on September 18, 1990. He does some chores at home, helping his wife, but he tells me that he is not involved in any strenuous activities or activities would [sic] require the prolonged use of his right shoulder."

In December, 1994, the administrative judge entered a decision in which he concluded that the employee had defrauded the insurer by concealing his New Hampshire employment for the purpose of claiming temporary total disability. The finding of fraud rested on the employee's failure to disclose his employment to TWA, the insurer, and a rehabilitation consultant prior to the August, 1993, conference, or to the impartial medical examiner before the May, 1994, hearing. Both parties moved for reconsideration. After hearing, the administrative judge issued an addendum in March, 1995, modifying the December, 1994, decision. As so modified, the judge's decision ordered that: (i) the insurer pay partial disability compensation in the amount of $120 per week; (ii) the insurer pay the employee's medical treatment costs; (iii) pursuant to § 14(2), the employee pay to the insurer the whole costs of the proceedings and attorney's fees (including direct payment of his own attorney's fees in the amount of $3,717), and a penalty of $3,259.80; and (iv) the insurer was entitled to recoup overpayments, up to a maximum weekly recoupment of $100.

The employee appealed the administrative judge's decision to the reviewing board of the department (board), which, in January, 1997, issued a decision that (i) reversed the administrative judge's finding of fraud and his orders pertaining to payment of costs, penalties, and fees; (ii) reversed the administrative judge's recoupment order, finding it to be beyond his authority; and (iii) vacated the administrative judge's calculation of earning capacity, recommitting the matter to the administrative judge for further findings on that subject. After issuance of the administrative judge's revised determination of the employee's earning capacity on remand, the insurer appealed to the board. In a "Summary Disposition" dated November 12, 1998, the board

left intact its January, 1997, decision.[1] The insurer next appealed the board's decision to a single justice of this court, who reinstated the decision of the administrative judge as to fraud, sanctions, and recoupment. However, the single justice also reported the case for consideration by a panel of this court,[2] because there is no current appellate law on the issues raised. We agree with the single justice that the administrative judge had authority to order recoupment of overpaid benefits, but we agree with the board that the employee did not commit fraud pursuant to § 14(2) of the Act.

*Standards of review.* In reviewing a decision of an administrative judge, the board must determine whether the decision is "beyond the scope of his authority, arbitrary or capricious, or contrary to law." G. L. c. 152, § 11C, as amended by St. 1991, c. 398, § 31. See *Aetna Life & Cas. Ins. Co.* v. *Commonwealth,* 50 Mass. App. Ct. 373, 377 (2000). We may set aside the board's decision only if it is infected with error under G. L. c. 30A, § 14(7)(*a*)-(*d*), (*f*)-(*g*). *Robinson's Case,* 416 Mass. 454, 457 (1993).[3]

---

[1]The board also affirmed the administrative judge's revised determination of the employee's earning capacity, which resulted in a higher weekly compensation rate of $254.02. The earning capacity calculation has not been challenged on appeal to this court.

[2]We note that it was not appropriate both to render a judgment in the case and to report it to a panel. See *Alberts* v. *Devine,* 395 Mass. 59, 65, cert. denied sub nom. *Carroll* v. *Alberts,* 474 U.S. 1013 (1985); *Ayala* v. *Boston Hous. Authy.,* 404 Mass. 689, 693 (1989), overruled on other grounds by *Barnes* v. *Metropolitan Hous. Assistance Program,* 425 Mass. 79, 85 (1997); Mass.R.Civ.P. 64, as amended, 423 Mass. 1403 (1996); Mass.R.A.P. 5, as amended, 378 Mass. 930 (1979). Our rules provide that the parties may appeal a determination of a single justice on the merits, or, without deciding the merits, the single justice may report the case to a panel. See Rule 2:01 of the Appeals Court, as amended, 3 Mass. App. Ct. 805 (1975); Rule 2:02 of the Appeals Court, as amended, 3 Mass. App. Ct. 806 (1975); Rule 2:04 of the Appeals Court, 28 Mass. App. Ct. 1201 (1989); Standing Order of the Appeals Court Governing Appeals from the Industrial Accident Reviewing Board, as amended, 1996. Nonetheless, in light of the parties' reliance on the report by the single justice, we decide the case as if the decision of the single justice were before us on appeal. See *Alberts* v. *Devine, supra*; *Ayala* v. *Boston Hous. Authy., supra.*

[3]Clause (*e*) of G. L. c. 30A, § 14(7), which authorizes a reviewing court to set aside an agency decision if it is "unsupported by substantial evidence," does not, under § 12(2) of the Act, apply to appeals from decisions of the

*Applicability of § 14(2).*[4] The board concluded, contrary to the administrative judge, that the employee did not commit fraud within the scope of § 14(2) of the Act, which provides, in pertinent part, as follows:

> "If it is determined that *in any proceeding within the division of dispute resolution,* a party, including an attorney or expert medical witness acting on behalf of an employee or insurer, concealed or knowingly failed to disclose that which is required by law to be revealed, knowingly used perjured testimony or false evidence, knowingly made a false statement of fact or law, participated in the creation or presentation of evidence which he knows to be false, or otherwise engaged in conduct that such party knew to be illegal or fraudulent, . . . the party shall be assessed, in addition to the whole costs of such proceedings and attorneys' fees, a penalty payable to the aggrieved insurer or employee, in an amount not less than the average weekly wage in the commonwealth multiplied by six." (Emphasis added.)

Under the statutory scheme established by §§ 10-11C of the Act, the process for determination of a claim for compensation benefits consists of four discrete stages, described in *Murphy* v. *Commissioner of the Dept. of Industrial Accs.,* 415 Mass. 218, 223-225 & n.13 (1993): (i) an initial informal conciliation proceeding (§ 10)[5]; (ii) a conference before an administrative judge (§§ 10, 10A); (iii) a hearing or hearings before an administrative judge (§ 11); and (iv) an appeal before the board (§ 11C). See *Neff* v. *Commissioner of the Dept. of Industrial Accs.,* 421 Mass. 70, 74 (1995). In its decision, the board correctly concluded that only proceedings within one of the four described stages fall within the scope of § 14(2). In so doing,

---

board. However, as noted in *Robinson's Case, supra* at 457, there is necessarily some degree of overlap between the "substantial evidence" standard and the remaining standards in § 14(7), as a decision utterly lacking factual support would be considered arbitrary.

[4]The parties do not challenge the board's conclusion that the amended version of § 14(2), see St. 1991, c. 398, § 37, which became effective on December 23, 1991, and which was declared substantive rather than procedural by St. 1991, c. 398, § 104, applies to the present case.

[5]The record includes no information about what occurred at the conciliation.

the board rejected the reasoning of the administrative judge that the provisions of § 14(2) must apply to all periods in which an employee receives benefits.

"[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Scheffler's Case,* 419 Mass. 251, 255 (1994), quoting from *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 513 (1975). "[T]he statutory language itself is the principal source of insight into the legislative purpose." *Scheffler's Case, supra,* quoting from *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977). "The language of the statute is not to be enlarged or limited by construction unless its object and plain meaning require it." *Gateley's Case,* 415 Mass. 397, 399 (1993). "The interpretation of a statute by the agency charged with primary responsibility for administering it is entitled to substantial deference." *Ibid.* However, "[a]n incorrect interpretation of a statute by an administrative agency is not entitled to deference." *Kszepka's Case,* 408 Mass. 843, 847 (1990).

Section 14(2) is explicit in its reference to "proceeding[s] within the division of dispute resolution." Under §§ 7 and 8 of the Act, an insurer may commence voluntary payment of weekly benefits without prejudice to its right to contest the claim later, or it may contest the claim by stating the grounds for its challenge. However, there is nothing in the Act to suggest that the mere filing of a claim and voluntary payment of benefits by an insurer constitute "proceeding[s] within the division of dispute resolution."[6] If the Legislature had wished to embrace within the punitive measures of § 14(2) all steps incident to the filing of claims for benefits under the Act, it could have so provided. Instead, it chose to limit the scope of § 14(2) to "proceeding[s] within the division of dispute resolution" which, under the comprehensive statutory scheme established under the

---

[6]In fact, the administration of such voluntary payments occurs in a separate division of the department.

Act, consist of the four stages described in *Murphy* v. *Commissioner of the Dept. of Industrial Accs.*, 415 Mass. at 223-225.

Nor does § 14(2) stand as the sole provision of the Act directed to fraud. Section 14(3), added as part of the 1991 amendments, see St. 1991, c. 398, § 38, applies inter alia to a broad sweep of statements or omissions made at any time for the purpose of obtaining benefits under the Act, and imposes sanctions including restitution, fines, and imprisonment for actionable misconduct. Unlike § 14(2), however, § 14(3) does not provide for payment of a penalty and attorney's fees to the insurer.[7] In light of § 14(3), and the plain language of § 14(2) limiting it to "proceeding[s] within the division of dispute resolution," we reject the insurer's assertion that a refusal to apply § 14(2) to the circumstances of this case allows claimants to commit fraud with impunity.

The insurer nonetheless contends that the employee (i) committed fraud during the course of proceedings within the division of dispute resolution by continuing, after the conciliation and until the conference order modifying his benefits, to collect and cash weekly disability payments premised on a total disability, which benefits he had procured by his previous failure to disclose his New Hampshire employment; and (ii) caused or contributed to the production of fraudulent evidence by failing to report to the impartial medical examiner his postinjury employment, which omission infected the examiner's report submitted in evidence at the hearing before the administrative judge.[8] As to the first argument, it is enough to observe that (as noted by the board) the employee's acts of cashing checks did not occur "in any proceeding" — they merely occurred at times

[7]Though the board's decision did not discuss the relationship of § 14(3) to the statutory framework, it noted that the 1991 amendments to the Act also added a new § 11D, which (in subpar. [1] thereof) imposes on employees entitled to receive compensation an affirmative duty to report all earnings to the insurer, and provides penalties for failure so to report. G. L. c. 152, § 11D(1), as inserted by St. 1991, c. 398, § 32. The new § 11D did not become effective, however, until after the employee was fired from his New Hampshire corrections job.

[8]The administrative judge did not find that the employee made a knowingly false statement to the impartial medical examiner regarding postinjury employment, and we do not consider whether such a statement would trigger § 14(2) sanctions.

that followed the commencement of proceedings within the division of dispute resolution.[9]

The insurer's second argument is similarly unavailing. The administrative judge, having concluded (incorrectly, as we have determined) that "[t]he 'proceeding' in this case began when [the employee] filed his claim, and will not end until he ceases to be involved in the worker's compensation system," made no findings whether the employee contributed to the production of false evidence, as the board noted. Moreover, given the fact that the employee had acknowledged his New Hampshire employment at the conference before the administrative judge in August, 1993, one would be hard pressed to conclude that, by failing to disclose the New Hampshire employment to the impartial medical examiner in January, 1994, the employee was attempting to place before the judge false or misleading evidence about his employment history. See *Scheffler's Case*, 419 Mass. at 258. Nor is there any indication that the impartial medical examiner was misled in his evaluation of the employee's medical condition or capacity to work by reason of the employee's failure to disclose his (then-terminated) New Hampshire employment.[10] We agree with the board's conclusion that the employee did not participate in the creation of evidence he knew to be false, within the meaning of § 14(2).[11]

*Recoupment.* The board reversed the administrative judge's

---

[9]Since they do not fall within § 14(2), we need not consider in this appeal whether the employee's acts of cashing checks in amounts that exceeded his entitlement (as eventually determined) would constitute fraud under any other theory.

[10]We also note that the impartial medical examiner's report is entitled to status as prima facie evidence as to matters of medical fact and related opinions, but not as to the employee's vocational status. See *Scheffler's Case*, 419 Mass. at 258-259.

[11]The insurer also asserts, in a general manner, that the examination by the impartial medical examiner was a "proceeding within the division of dispute resolution." However, the insurer does not further argue that the employee's failure to disclose to the impartial medical examiner his postinjury employment violated the portion of § 14(2) directed to concealment or knowing failure to disclose in a "proceeding . . . that which is required by law to be revealed." We thus need not decide, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), whether the board was correct in its conclusion that the impartial medical examiner's examination of the employee was not a "proceeding" within the meaning of § 14(2).

recoupment order, finding that, absent a new complaint filed by the insurer pursuant to §§ 10 and 11D(3) of the Act, the judge was without authority to order the recoupment sua sponte. In reversing the recoupment order, the board construed § 11D(3) of the Act to require a separate complaint for any order of recoupment in an amount greater than an insurer is authorized to deduct unilaterally from weekly benefit payments. Section 11D(3) (set out in the margin)[12] allows an insurer unilaterally to reduce prospective weekly benefit payments by up to thirty per cent to recover overpayments indicated in a decision of an administrative judge. Recoupment in a larger amount (or by means other than offset) "may be ordered pursuant to the filing of a complaint pursuant to section ten [of the Act]."

In reversing the decision of the administrative judge, the board construed the permissive "may" as a mandatory term, concluding that a separate complaint following entry of the administrative judge's decision is the only means to authorize recoupment in amounts greater than thirty per cent of the weekly benefits. We construe "may," as appearing in § 11D(3), in its ordinary, permissive, sense; we conclude that the Legislature intended only to specify one permissible means for recoupment of overpayments in circumstances where the administrative judge's decision declared such overpayments to exist without providing for their recoupment. Cf. *Cohen* v. *Board of Water Commrs., Fire Dist. No. 1, S. Hadley*, 411 Mass. 744, 751-752 (1992) (use of "may" in statute authorizing assessment of water charges to condominium association was permissive rather than mandatory, and did not preclude other assessment systems).

[12]General Laws c. 152, § 11D(3), provides:

> "An insurer that has paid compensation pursuant to a conference order, shall, upon receipt of a decision of an administrative judge or a court of the commonwealth which indicates that overpayments have been made be entitled to recover such overpayments by unilateral reduction of weekly benefits, by no more than thirty percent per week, of any remaining compensation owed the employee. Where overpayments have been made that cannot be recovered in this manner, recoupment may be ordered pursuant to the filing of a complaint pursuant to section ten or by bringing an action against the employee in superior court."

Considered in its entirety, the limitation in § 11D(3) appears directed at the scope of an insurer's *unilateral* right to reduce weekly benefit payments where the administrative judge finds overpayment but does not address recoupment. Compare *Murphy's Case, ante* 424, 430 (2001) (declining to order recoupment on appeal, where administrative judge did not order recoupment in underlying decision). In such circumstances, a new § 10 complaint would be necessary to bring the matter back before the administrative judge. We see no reason to limit the authority § 11D(3) confers on administrative judges to order recoupment so as to exclude situations where, as here, the need for recoupment is evident in a pending action initiated by an earlier § 10 complaint.

Furthermore, one of the evident purposes of the 1991 amendments to the Act was to streamline the process of claims administration. See *Murphy* v. *Commissioner of the Dept. of Industrial Accs.*, 418 Mass. 165, 170 (1994). We see no benefit to the efficient administration of claims in a rule that would require a separate complaint for recoupment where an administrative judge is able to address the need for recoupment in his determination of a pending claim.

*Attorney's fees.* The board was correct to order the insurer to pay the employee's attorney's fees. The insurer initiated this action with a request to discontinue benefits and subsequently appealed from the administrative judge's conference order. Section 13A(5) of the Act requires payment of the employee's attorney's fees if the employee "prevails." As the employee has successfully defended against the insurer's request for discontinuance of benefits, the employee is entitled to his attorney's fees. The fact that the employee's benefits were reduced does not produce a different result. See *Cruz's Case*, 51 Mass. App. Ct. 26, 28-29 (2001). Contrast *Green's Case*, 52 Mass. App. Ct. 141, 144 (2001). The insurer's argument that it should be excused from responsibility for the employee's attorney's fees by reason of the employee's violation of § 14(2) is inapposite, in light of our holding that no violation of § 14(2) occurred.

*Conclusion.* The judgment of the single justice is vacated.

The portions of the board's decision assessing the insurer for the employee's attorney's fees and reversing the administrative judge's finding of fraud and its associated sanctions are affirmed. That portion of the board's decision concluding that the administrative judge was without authority to order recoupment sua sponte is reversed. A new judgment shall enter accordingly.

*So ordered.*