## MARY CONROY'S CASE.

No. 02-P-1061.

Suffolk. September 10, 2003. - June 7, 2004.

Present: LENK, SMITH, & DUFFLY, JJ.

*Insurance,* Workers' compensation insurance. *Workers' Compensation Act,* Attorney's fees, Conference procedure, Discontinuance of payments. *Words,* "Prevailing party."

The reviewing board of the Department of Industrial Accidents properly upheld an administrative judge's determination that an employee had "prevailed" in a G. L. c. 152, § 11, hearing on her former employer's (the self-insurer's) complaint for discontinuance or modification of workers' compensation benefits, entitling her to an award of attorney's fees and expenses under G. L. c. 152, § 13A(5), despite the fact that the employer, after an adverse finding on its complaint at an informal conference, G. L. c. 152, § 10A, succeeded in its bid to discontinue benefits to the claimant at the § 11 hearing, in circumstances where the employee had been successful in obtaining, and retaining against possible recoupment, ten weeks of benefits, running from the date of the informal conference order and continuing to the date on which the benefits were ultimately discontinued. [273-277]

APPEAL from a decision of the Industrial Accident Reviewing Board.

The case was heard in the Appeals Court by *Cowin,* J.

*Michael J. Powell, Jr.,* for the employee.

*Paul M. Moretti* for the employer.

DUFFLY, J. Mary Conroy, a former employee of the self-insurer, Norwood Hospital (hospital), was awarded attorney's fees and reasonable expenses in connection with the hospital's complaint for discontinuance or modification of workers' compensation benefits. When the hospital's request was denied following an informal conference, G. L. c. 152, § 10A, it sought a hearing pursuant to G. L. c. 152, § 11, where the hospital suc-

ceeded in its bid to discontinue benefits to Conroy. The review-
ing board of the Department of Industrial Accidents (department)
upheld the administrative judge's determination that Conroy
had "prevailed" in the § 11 hearing, entitling her to an award
of attorney's fees and expenses under G. L. c. 152, § 13A(5).

At the crux of the reviewing board's decision was the fact
that the hospital did not, at any point in the proceedings when it
might have been appropriate to do so, limit the period for which
Conroy was at risk for recoupment of benefits ordered to be
paid after the informal conference, and that she therefore was
required to defend against the possibility that the hospital would
seek a recoupment of benefits to at least the date of the confer-
ence order. We agree that on the particular facts of this case
Conroy prevailed at the hearing.

1. *Summary of facts and proceedings.* We summarize certain
facts to provide a background for the dispute. Conroy was hired
as a nurse's aide at the hospital in 1989. Her duties eventually
required that, among other things, she transport patients from
the postsurgery recovery room to different floors in the hospital.
On March 12, 1993, Conroy attempted to push a patient in a
heavy bed into the hospital elevator when one of the wheels of
the bed became caught in the threshold. As Conroy lifted the
bed in an attempt to dislodge the wheel, she felt a "crack"
across her back. Conroy sought treatment in the hospital's
emergency room immediately after the incident, and later with a
series of physicians. Her treatment consisted primarily of medi-
cal and physical therapy, as well as cortisone injections ap-
proximately every six months, but no surgery was ever
performed.

At the time of the incident, the hospital accepted Conroy's
workers' compensation claim and Conroy received temporary
total incapacity benefits pursuant to G. L. c. 152, § 34, at a rate
of $195.89 per week (based on an average weekly wage of
$326.48).

On December 12, 1994, the hospital filed a complaint for
leave to discontinue or modify benefits. The hospital's com-

plaint did not request a specific termination date.[1] On March 14, 1995, an administrative judge of the department held an informal conference pursuant to G. L. c. 152, § 10A, as amended through St. 1991, c. 398, §§ 27, 28, in the course of which Conroy, assisted by counsel, presented her case.[2] The conference order denied the hospital's request for discontinuance and continued Conroy's weekly benefit payments. The hospital requested a de novo evidentiary hearing pursuant to G. L. c. 152, § 11.

The hospital's request for a § 11 hearing triggered the appointment of an impartial medical examiner in accordance with G. L. c. 152, § 11A, and Dr. Forrest Maddix was duly appointed.[3] Conroy was examined by Dr. Maddix on May 25, 1995. In his examination report, Dr. Maddix stated that Con-

---

[1] A copy of that complaint was not included in the record. It is not disputed that the complaint sought to modify or to discontinue benefits but did not specify a date from which the modification or discontinuance would run (presumably because, as of the date of the complaint, this was not yet known).

We note that documentation supporting the hospital's assertion that Conroy was no longer entitled to § 34 benefits should have been included with the complaint. G. L. c. 152, § 7G. The department's regulations specifically require that an insurer's complaint "shall be accompanied, where applicable, by the following documentation: (1) hospital and medical records; (2) physician's report(s) opining work capacity which shall be no more than six months old; (3) an investigator's report or a synopsis which contains information indicating that the employee is working or exhibiting the capability of working, where the report is the sole basis for discontinuance; (4) wage records demonstrating employment of the employee during the period compensation was collected; (5) a job description of any work offered to the employee when accompanied by a medical report which contains a physician's opinion that the employee is capable of doing such work; (6) a brief memorandum or affidavit specifying the basis for the request to modify or terminate benefits." 452 Code Mass. Regs. § 1.07(2)(j) (1993). Nothing in the record suggests that the complaint was not accompanied by the requisite documentation supporting discontinuance or modification.

[2] "The conference procedure was enacted (St. 1971, c. 974) to allow the board 'to expedite compensation claims without the necessity of a full hearing.' *Assuncao's Case*, 372 Mass. 6, 9 (1977). At the conference, the parties must 'identify the issues in dispute' and 'produce a summary of any anticipated testimony.'" *Murphy* v. *Commissioner of the Dept. of Industrial Accidents*, 415 Mass. 218, 223 (1993).

[3] Section 11A provides, in relevant part: "The report of the impartial medical examiner shall, where feasible, contain a determination of the following: (i) whether or not a disability exists, (ii) whether or not any such disability is total or partial and permanent or temporary in nature, and (iii) whether or not

roy's "symptoms are grossly exaggerated" and concluded "that there is no apparent organic justification from an orthopedic standpoint for continuing to consider that she is disabled as a result of an incident occurring at work in March, 1993." Dr. Maddix limited his report to Conroy's presentation at the time of the examination; he made no findings concerning her condition prior to May 25, 1995.

Neither party deposed Dr. Maddix, and his report was submitted as prima facie evidence at the subsequent § 11 hearing before the administrative judge. See G. L. c. 152, § 11A(2). At the beginning of that hearing, as well as at the close of Conroy's testimony, counsel for Conroy moved to introduce additional medical evidence. The hospital opposed both motions, claiming that the impartial medical examiner's report was adequate. The administrative judge agreed and denied Conroy's request. See G. L. c. 152, § 11A(2).

The administrative judge adopted Dr. Maddix's opinion, concluding that Conroy "has no disability, partial or total, temporary or permanent, which is causally related to the incident of March 12, 1993," and that Conroy was, therefore, no longer entitled to benefits, which were ordered discontinued as of the May 25, 1995, examination. Under authority of G. L. c. 152, § 13A(5), the administrative judge's decision further required the hospital to pay to Conroy attorney's fees and expenses in the amount of $3,912.35.

The hospital appealed to the reviewing board, see G. L. c. 23E, § 5; G. L. c. 152, § 11, taking the position that Conroy had not "prevailed" as contemplated by § 13A(5), because "the administrative judge did not direct payment of weekly or other compensation exceeding that being paid by the insurer prior to the date of decision." Conroy took no appeal from any part of the decision.

A two-person majority of the reviewing board recommitted the matter to the administrative judge, concluding that it was

within a reasonable degree of medical certainty any such disability has as its major or predominant contributing cause a personal injury arising out of and in the course of the employee's employment. Such report shall also indicate the examiner's opinion as to whether or not a medical end result has been reached and what permanent impairments or losses of function have been discovered, if any."

unable to render a decision absent additional findings on the issue whether Conroy was faced with, and thus was required to defend against, the risk of losing benefits during the period preceding the May 25, 1995, discontinuance date. The reviewing board framed the issues to be determined as follows:

> "In order to receive an attorney's fee under G. L. c. 152, § 13A(5), the employee must prevail on some disputed issue at hearing, either by gaining or not losing some degree of benefits within the disputed time frame. . . . Ordinarily, in the context of an original liability claim, the disputed period begins from the date of injury or the last day of work. By contrast when an insurer seeks to discontinue, the disputed period begins no earlier than the filing date of the complaint, as said filing signifies its resistance to each ensuing payment. . . . [I]nsurers can, and many do, decide at any stage of the dispute process to stipulate to an abbreviated contested time frame or they may desist entirely."

On remand, the administrative judge conducted a further hearing, during which he permitted Conroy (over the hospital's objection) to introduce additional medical evidence.[4] In his decision following remand, the administrative judge made these additional subsidiary findings: "the employee was totally disabled at least through February 8, 1995. There was no medical evidence covering the period from December 12, 1994, through the May 25, 1995, [report] which indicated that the employee's disability was less than total"; at the time of the hearing, "the [hospital's] issue sheet did not specify the specific period in dispute"; and "[t]he hearing transcript is silent as to the specific dates of the period in dispute."[5] The administrative judge determined that the "period in dispute" began on December 12,

---

[4]The reviewing board's order recommitting the matter states that "[t]he findings here are deficient because they do not set out the time frame in dispute and whether there was causally related incapacity during that period." We think it was within the discretion of the administrative judge to conduct a further hearing if he reasonably determined, as he apparently did in this case, that additional evidence was necessary in order to make the additional findings requested by the reviewing board.

[5]The insurer must state its grounds for seeking modification or discontinuance at the hearing, 452 Code Mass. Regs. § 1.11(3) (1993), and complete

1994, the date of the hospital's complaint to discontinue benefits, and ended on May 25, 1995, the date of the impartial medical examination, and that Conroy had therefore "prevailed" in demonstrating her entitlement to benefits for that time period and was thus entitled to collect attorney's fees. The board unanimously affirmed the administrative judge's decision, *Conroy* v. *Norwood Hosp.*, 14 Mass. Workers' Comp. Rep. 130 (2000), and the hospital brought an appeal.[6]

We agree with the decision of the reviewing board, bearing in mind that "[w]e may set aside the [reviewing] board's decision only if it is infected with error under G. L. c. 30A, § 14(7)(*a*)-(*d*), (*f*)-(*g*)," *Murphy's Case*, 53 Mass. App. Ct. 708, 711 (2002), and that "[o]rdinarily an agency's interpretation of its own rule is entitled to great weight." *Gonzalez's Case*, 41 Mass. App. Ct. 39, 41 (1996), quoting from *Finkelstein* v. *Board of Registration in Optometry*, 370 Mass. 476, 478 (1976).

2. *Discussion.* The Workers' Compensation Act provides for the award of attorney's fees when an employee prevails at a § 11 hearing. G. L. c. 152, § 13A(5).[7] The word "prevail" is not defined in the statute but applicable regulations provide that "the claimant shall be deemed to have prevailed, for the purposes of M. G. L. c. 152, § 13A, when compensation is ordered or is not discontinued at such proceeding . . . [excluding circumstances not relevant here]." 452 Code Mass. Regs. § 1.19(4) (1992). Our decisional law has also ascribed meaning to the concept "prevailing party." In *Connolly's Case*, we said that an employee is considered the prevailing party if she "suc-

and submit an issue sheet, also known as a hearing memorandum. See, e.g., Department of Industrial Accidents Form 162, "Insurer's Hearing Memorandum."

[6]Initial review was by a single justice of this court. In a decision by which we are not bound, the single justice reversed the reviewing board's determination. Conroy then sought review by a full panel of this court.

[7]General Laws c. 152, § 13A(5), provides, in relevant part, as follows:

"Whenever an insurer files a complaint or contests a claim for benefits and then . . . the employee prevails at [a] hearing [pursuant to section eleven], the insurer shall pay a fee to the employee's attorney in an amount equal to three thousand five hundred dollars plus necessary expenses."

ceeds on any significant litigation issue, achieving 'some of the benefit' sought in the controversy." 41 Mass. App. Ct. 35, 38 (1996), quoting from *Nadeau* v. *Helgemoe*, 581 F.2d 275, 278-279 (1st Cir. 1978), overruled in part by *Richardson* v. *Miller*, 279 F.3d 1, 4 (1st Cir. 2002). See *Draper* v. *Town Clerk of Greenfield*, 384 Mass. 444, 453 (1981), cert. denied sub nom. *Draper* v. *Prescott*, 456 U.S. 947 (1982).[8]

In the context of a complaint by an insurer to discontinue or modify benefits, a conference order denying a request to discontinue or modify is, in effect, an order requiring the insurer to pay compensation. Consequently, at any date thereafter, the insurer is paying "compensation pursuant to a conference order." If the insurer then requests a de novo evidentiary hearing after which the request to discontinue benefits is allowed, an insurer is entitled to recover any overpayments. G. L. c. 152, § 11D(3).[9]

By appealing the conference order, the hospital was, in effect, asserting the position that the administrative judge erred in failing to discontinue the employee's benefits from, at the very least, the date of the conference order denying its complaint. As

---

[8]The hospital relies on *Green's Case*, 52 Mass. App. Ct. 141, 145 (2001), for the proposition that, in determining whether an employee has prevailed, the focus must be on the results achieved by the employee in the litigation. In that case, however, we were considering the regulation at 452 Code Mass. Regs. § 1.19(4), in the context of an appeal by the employee. We said that an employee appealing from a conference order cannot, in connection with the subsequent § 11 hearing, "be considered to have prevailed where he did not increase his benefits by his appeal." *Green's Case*, 52 Mass. App. Ct. at 145.

[9]General Laws c. 152, § 11D(3), provides:

> "An insurer that has paid compensation pursuant to a conference order, shall, upon receipt of a decision of an administrative judge or a court of the commonwealth which indicates that overpayments have been made be entitled to recover such overpayments by unilateral reduction of weekly benefits, by no more than thirty percent per week, of any remaining compensation owed the employee. Where overpayments have been made that cannot be recovered in this manner, recoupment may be ordered pursuant to the filing of a complaint pursuant to section ten or by bringing an action against the employee in superior court."

See *Murphy's Case*, 53 Mass. App. Ct. 424, 429-430 (2001); *Brown* v. *Highland House Apts.*, 12 Mass. Workers' Comp. Rep. 322, 324-325 & n.6 (1998).

the administrative judge found, the hospital did not, at any point in the proceedings, limit the time period for which it sought discontinuance.[10]

Where the insurer (or here, the self-insurer) appeals from a conference order denying its request to discontinue benefits and it does not limit the time frame for that request, it triggers "the third stage of the review process," a hearing de novo where, once again, the employee is put to the task of proving her entitlement to benefits for all of the potential time frames falling under the umbrella of the insurer's complaint for discontinuance. See *Murphy* v. *Commissioner of the Dept. of Industrial Accs.*, 415 Mass. 218, 224 (1993). See also *Mulcahey's Case*, 26 Mass. App. Ct. 1, 3 (1988) (burden of proving incapacity rests with employee "even where compensation has been awarded and the insurer is applying for discontinuance"); *Connolly's Case*, 41 Mass. App. Ct. at 37.

The hospital argues that its decision not to offer additional medical evidence at the first § 11 hearing, coupled with its objection to Conroy's submission of such evidence, was indicative of its position that it was seeking to terminate benefits only as of the date of the independent medical examination.[11] The hospital notes that, when there is no evidence to indicate that an

___

[10]The parties were free to enter into a stipulation providing for an abbreviated contested time frame. The hospital also could have delineated the period of time in dispute in its statement of issues set forth in the memorandum filed at the § 10A conference. 452 Code Mass. Regs. § 1.10(2) (1993).

Even assuming that the hospital reasonably awaited the outcome of the impartial medical examiner's report before setting the parameters of the period in dispute, once in receipt of the report the hospital could have limited the time frame for which it sought discontinuance to coincide with the date of the medical examination. 452 Code Mass. Regs. § 1.10(2) (1993) (conference "memorandum may be amended by the parties, with the leave of the administrative judge, at or before the hearing"). To the extent that any such amendment may be deemed as a withdrawal of a portion of the complaint, the hospital could have avoided the subsequent imposition of attorney's fees by filing its motion to amend at least five days prior to the hearing. G. L. c. 152, § 13A(5). The hospital also could have served the employee or her counsel with an offer to pay compensation until the date of the impartial medical examiner's report and, if served at least five days prior to the hearing, avoided payment of the attorney's fees. 452 Code Mass. Regs. § 1.19(3) (1993).

[11]In his decision following the hearing on remand, the administrative judge stated he was "not persuaded by the argument of the insurer that it was following board 'practice' in not setting a specific date for modification, choos-

earlier date is warranted, the date for termination of benefits will often coincide with that of the impartial exam. This is so even though the law permits retroactive termination to the date the complaint was filed. See *Cubellis* v. *Mozzarella House, Inc.*, 9 Mass. Workers' Comp. Rep. 354, 356 (1995).

Although we acknowledge that in this field certain procedures may have developed in accordance with established practice[12] (and even accepting that complaints for retroactive termination are "rare"), in the absence of some affirmative limitation set by the insurer, the employee is not relieved of her burden of proving entitlement to benefits for the entire time period covered by the insurer's complaint, and remains at risk for recoupment. See *Connolly's Case, supra* at 37 ("all the benefits granted in the conference order were in jeopardy"). Cf. *Cruz's Case*, 51 Mass. App. Ct. 26, 29 (2001) (where employer sought reduction, suspension, or discontinuance of benefits, and issue at § 11 hearing included extent of present disability and cause of present disability, "[t]he insurer by its appeal was contesting not only the extent of the employee's disability but also its causal relationship to the accident," placing entire entitlement to compensation in jeopardy).

The hospital seeks to distinguish *Connolly's Case*, arguing that the administrative judge had in that case ordered continuation of benefits awarded at the time of the conference.[13] We disagree and conclude that the holding in that case is applicable

---

ing, therefore, to accept the date in evidence standard, i.e., the impartial physician's report. The argument is entirely self-serving, is not supported by any statement on the record, or document in evidence, and was based upon the one hundred per cent assurance that comes with hindsight."

[12]On review from the appeal of the first decision of the administrative judge, for example, one member of the three-member reviewing board dissented, noting that "the norm for resolving medical disputes is an impartial medical exam under § 11A" and that "insurers never ask for a specific date." *Conroy's Case*, 11 Mass. Workers' Comp. Rep. 487, 493 & n.7 (1997) (McCarthy, J., dissenting). See note 10, *supra.*

[13]We reversed the failure to award Connolly attorney's fees under § 13A(5), holding that he had prevailed in the following relevant circumstances: Connolly was injured on April 18, 1991, and returned to work on July 10, 1991. In connection with his employer's challenge to Connolly's disability, a conference order awarded Connolly temporary total incapacity compensation from April 19, 1991, to July 2, 1991. Connolly and the employer appealed — Connolly sought benefits beyond July 2, 1991, whereas the employer raised issues

as well to the circumstances here, and that Conroy has prevailed because compensation was ordered "in the sense that the previously ordered payments were confirmed." *Connolly's Case*, 41 Mass. App. Ct. at 37. Although the present case does not involve a claim for initial disability, the issues at the first § 11 hearing, as in *Connolly's Case, supra,* were "the issue[s] of disability and extent of disability, causal relationship of present disability." In the absence of a definitive statement in the hearing memorandum or a stipulation of the parties limiting the disputed period to the date of the impartial medical examination, it was within the authority of the administrative judge to reduce, retroactively, the temporary disability payments awarded by the conference order. "Had the administrative judge, responding to the employer's appeal, in any way reduced the temporary disability payments awarded by the conference order, the employee would have been exposed to a recoupment claim by the employer for the recovery of overpayments pursuant to § 11D(3)." *Connolly's Case, supra* at 37-38. *Murphy's Case*, 53 Mass. App. Ct. at 717.

Viewed in the context of the hospital's open-ended complaint for discontinuance, the absence of a specific limitation as to the period for which discontinuance of benefits was sought, and the conference order requiring ongoing payment of benefits, Conroy was successful at the § 11 hearing in obtaining, and retaining against possible recoupment, an additional ten weeks of benefits, running from the date of the conference order on March 14, 1995, and continuing to May 25, 1995, the date benefits were discontinued.

3. *Conclusion.* Based on the foregoing, we reverse the judgment of the single justice, and order the entry of a new judgment affirming the decision of the reviewing board dated May 23, 2000.

*So ordered.*

of liability, disability, and extent of disability. The administrative judge confirmed the period of temporary total disability, but then concluded that Connolly was capable of returning to work without restriction. We determined that Connolly had prevailed "in the sense that the previously ordered payments were confirmed." *Connolly's Case, supra* at 37.