## CRAIG M. RICHARDS'S CASE.

No. 04-P-1073.

Suffolk. October 12, 2004. - December 21, 2004.

Present: LAURENCE, BROWN, & COWIN, JJ.

*Workers' Compensation Act,* Attorney's fees.

An employee whose claim for workers' compensation benefits was contested by an insurer could be considered to have prevailed for purposes of recovering attorney's fees under G. L. c. 152, § 13A(5), even though the employee's claim for benefits was ultimately denied and dismissed, where the insurer filed a complaint against the employee alleging that the employee's claim was fraudulent under G. L. c. 152, § 14(2), and the employee prevailed with respect to that complaint. [705-708]

APPEAL from a decision of the Industrial Accident Reviewing Board.

*Nicole M. Edmonds* for the insurer.

*Michael M. Kaplan* for the employee.

LAURENCE, J. This case presents another variation of a frequently litigated issue: when can an employee whose claim for workers' compensation benefits is contested by the insurer be deemed to have "prevailed" for the purpose of recovering attorney's fees under G. L. c. 152, § 13A(5)?[1] Here, the employee's claim was ultimately denied and dismissed, after de novo evidentiary hearings before a Department of Industrial Accidents (DIA) administrative judge, on the ground that the employee had failed to prove he had actually sustained a com-

---

[1]General Laws c. 152, § 13A(5), provides, in pertinent part: "Whenever an insurer files a complaint or contests a claim for benefits and . . . the employee prevails at [a] hearing [pursuant to c. 152, § 11,] the insurer shall pay a fee to the employee's attorney in an amount equal to three thousand five hundred dollars plus necessary expenses. An administrative judge may increase or decrease such fee based on the complexity of the dispute or the effort expended by the attorney."

pensable industrial injury as alleged (falling off a two-story roof and being thereafter unable to work because of back pain). At the same time, the administrative judge rejected as unproven the complaint by the workers' compensation insurer, Liberty Mutual Insurance Company, that the employee's claim was fraudulent under G. L. c. 152, § 14(2) (the insurer asserting that the employee had fabricated or staged the supposed accident).[2]

On both parties' administrative appeals, the reviewing board summarily affirmed the administrative judge's denial of workers' compensation benefits. A majority of the three-person board, however, while "acknowledg[ing] it as a close call," upheld the employee's contention that the administrative judge committed error in failing to award him a § 13A(5) attorney's fee for "prevailing" against the insurer's fraud complaint, a conclusion the dissenting member thought contrary to DIA regulations.

*Procedural facts.*[3] The employee, Craig M. Richards, filed a claim with the insurer shortly after he reported that on May 10, 1996, he had fallen from a two-story roof as he attempted to climb down a ladder from the roof while on an inspection for his employer, Ultimate Chimney Sweep. The accident left him, he contended, with constant back pain and totally unable to work. The insurer proceeded to pay him benefits from May 11, 1996, through October 10, 1996, when it terminated payments on the ground that an impartial medical examiner had released him to perform light work. The employee then filed a claim for continuing benefits under G. L. c. 152, § 34 (temporary, total incapacity), from October 10, 1996, which the insurer denied. Following a conference before the administrative judge in early February, 1997, pursuant to G. L. c. 152, § 10A, during which

---

[2]General Laws c. 152, § 14(2), provides, as here pertinent, "If it is determined that in any proceeding within the division of dispute resolution [i.e., in proceedings before an administrative judge,] a party . . . knowingly . . . used . . . false evidence, knowingly made a false statement of fact or law, participated in the creation or presentation of evidence which he kn[ew] to be false, or otherwise engaged in conduct that such party knew to be illegal or fraudulent, . . . the party shall be assessed, in addition to the whole costs of such proceedings and attorneys' fees, a penalty payable to the aggrieved insurer . . . in an amount not less than the average weekly wage in the commonwealth multiplied by six."

[3]The facts set forth are based upon the administrative judge's findings supported by the record and uncontroverted admissible evidence.

the insurer first raised the issue of the employee's fraudulent staging of the incident, the administrative judge awarded the employee § 34 benefits[4] from May 10, 1996, to November 18, 1996, and also ordered the payment of § 35 (partial incapacity) benefits[5] from and after November 19, 1996.[6]

Both the employee and the insurer appealed the conference order, pursuant to G. L. c. 152, §§ 10A(3) and 11, the employee seeking additional compensation and medical benefits and the insurer reiterating its complaints that benefits should be discontinued because no compensable injury had occurred and that the employee had committed § 14(2) fraud.[7]

On February 25, 1999, after three days of evidentiary hearings, the administrative judge did not credit the employee's testimony regarding his claim, and concluded that the employee had failed to establish that he had "sustained an industrial injury on May 10, 1996"; moreover, notwithstanding the questionable nature of the employee's claim,[8] the administrative judge was "not persuaded that there [was] a § 14 violation by" the employee.

Appealing to the reviewing board (see G. L .c. 152, § 11C), the employee attacked the administrative judge's wholesale denial of his claim as arbitrary, capricious, and lacking in evidentiary support, and faulted the administrative judge for not awarding him attorney's fees under § 13A, on the grounds that "the Insurer's claim for fraud against the employee was denied"

---

[4]At the rate of $323.26 per week, based on an average weekly wage of $538.76.

[5]Of $179.26 per week, based on a weekly earning capacity of $240.

[6]The employee received, all told, $8,897.90 of § 34 benefits and $28,152.65 of § 35 benefits from the insurer through the date of the administrative judge's hearing decision on February 25, 1999.

[7]The insurer did not raise the issue of its right to recoup payments it had made to the employee should it prevail on its complaints, see G. L. c. 152, § 11D(3), during either the conference or the hearing.

[8]The administrative judge found that any physical problems the employee might have arose out of two earlier (and nonemployment related) back injuries he had sustained; the judge noted particularly the facts that the employee had not called as a witness his coworker at the time of the alleged injury; he had not sought medical treatment until five days after the supposed two-story fall; the records of that treatment mentioned no bruising or other sign of injury; and the employee had played basketball and tried to work as a truck unloader during the period of his alleged disability.

and "the Insurer was seeking money back and the employee was allowed to keep that money [and therefore] prevailed on retaining benefits sought to be returned." (But see note 7, *supra*.)

The insurer cross-appealed, relying on the evidence in the record and the administrative judge's unchallengeable credibility determinations to support the denial of the employee's claim for benefits. As to the attorney's fee issue, the insurer contended that an employee "prevails" only when an administrative judge orders compensation or does not discontinue previously ordered benefits, neither of which occurred here.[9] The insurer did not respond to, much less dispute, the employee's assertion that he had prevailed by being allowed to retain the benefits he had previously received and which the insurer had "sought to be returned."

Because the administrative judge's denial and dismissal of the employee's claim for benefits had been grounded on credibility findings supported by the evidence, the reviewing board summarily affirmed that aspect of the administrative judge's decision. The reviewing board was divided, two to one, however, on the attorney's fee issue. The majority relied on recent administrative precedent for the principle that an employee who successfully defends against an insurer's claim of § 14(2) fraud has prevailed by avoiding the imposition of thousands of dollars of costs and penalties.[10] The majority saw support for this principle in judicial authority pronouncing the general proposition that an employee prevails if he succeeds on any significant litigation issue, thereby achieving some of the benefit sought in the controversy. (See discussion of this authority, *infra*.) The majority also perceptively noted that interpreting § 13A so as to deny a fee in these circumstances would be irrational and implicate issues under the equal protection guarantees of the Massachusetts and United States Constitutions

[9]The insurer relied on the language of 452 Code Mass. Regs. § 1.19(4) (1992), which states in relevant part: "In any proceeding before [an administrative judge], the claimant shall be deemed to have prevailed, for the purpose of M. G. L. c. 152, § 13A, when compensation is ordered or is not discontinued at such proceeding . . . ."

[10]The precedent was *Talbot* v. *Stanton Tool & Mfg., Inc.*, 11 Mass. Worker's Comp. Rep. 528 (1997), which the majority stated involved "the same operative facts as . . . here." *Talbot* was not appealed.

that would be avoided by applying the appropriate statute and regulation. Cf. *Neff* v. *Commissioner of the Dept. of Indus. Accidents*, 421 Mass. 70, 72-73 (1995) (constitutional questions are not be reached if the issue can be resolved by statutory interpretation). It ordered the case recommitted to the administrative judge for assessment of the employee's attorney's fee.

The dissenting member of the reviewing board agreed with the insurer, deeming a fee clearly precluded in this case by the language of 452 Code Mass. Regs. § 1.19(4) (see note 9, *supra*), and finding support for denial of a fee in other judicial authority supposedly so construing the regulation (see note 14, *infra*).

The insurer has appealed to this court, pursuant to G. L. c. 152, § 12(2),[11] solely on the issue of the propriety of the attorney's fee award. On the statute and the particular facts presented, we do not view the issue as a close call and affirm the reviewing board's decision.

*Discussion.* As always, "the statutory language itself," *Scheffler's Case*, 419 Mass. 251, 255 (1994), quoting from *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977), is our fundamental starting point in attempting to ascertain the intent of the Legislature when the meaning or application of one of its statutes is at issue. As we recently stated: " 'Where the language of a statute is clear and unambiguous, it is conclusive as to the legislative intent' . . . and 'the courts [will] enforce the statute according to its [plain] wording'. . . . [W]hen a statute speaks with clarity to an issue[,] judicial inquiry . . . , in all but the most extraordinary circumstance, is finished . . . [and] 'we need not look beyond the words of the statute itself.' " *Martha's Vineyard Land Bank Commn.* v. *Board of Assessors of W. Tisbury*, 62 Mass. App. Ct. 25, 27-28 (2004) (citations omitted).

General Laws c. 152, § 13A(5), plainly and unambiguously provides for an attorney's fee award in two distinct scenarios (see note 1, *supra*): "[w]henever an insurer [a] files a complaint *or* [b] contests a claim for benefits" (emphasis added) and the

---

[11]Under Appeals Court Rule 2:04 (1990) and Standing Order of the Appeals Court Governing Appeals from the Industrial Accident Reviewing Board, as amended, 1996, the appeal was entered on the docket of the single justice, who thereafter reserved and reported the case to a panel of the justices.

employee prevails against the complaint or contest. Here, the insurer indisputably filed a § 14 fraud complaint[12] against the employee, in addition to a complaint (alleging the employee had not suffered a compensable injury) that contested his claim for benefits. The employee unquestionably prevailed with respect to the § 14 fraud complaint, achieving (in the words of the reviewing board majority) "an unequivocal and unambiguous success" against that complaint. No further analysis is required under the statute.

Were any ambiguity detectable in the application of § 13A(5), however, the reviewing board's interpretation of that statute to mandate an attorney's fee award to an employee when an insurer's fraud complaint against the employee is defeated — an interpretation that "is entitled to [our] substantial deference," *Gateley's Case*, 415 Mass. 397, 399 (1993), and to "great weight" on appeal, *Gonzalez's Case*, 41 Mass. App. Ct. 39, 41 (1996) — would resolve it. The reviewing board noted the contrast between the generality of the term "complaint" in § 13A(5) (applicable to § 11 hearings) and the specificity of the term as used in § 13A(4) (applicable to conferences).[13] The reviewing board also refused to apply 452 Code Mass. Regs. § 1.19(4) so literally as to restrict and contradict the scope and generality of the plain language of the statute and properly held that regulation inapplicable to cases such as this,[14] in which the

---

[12]This was the reviewing board majority's accurate characterization of the fraud charge, and one the insurer has never contested, since G. L. c. 152, § 10(1), provides that proceedings within the division of dispute resolution are commenced "on the receipt of a claim for compensation, [or] a complaint from the insurer requesting a modification of discontinuance of benefits, *or a complaint from any party requesting resolution of any other issue arising under this chapter . . . .*" (Emphasis added.)

[13]Whereas § 13A(5) speaks generally ("[w]henever an insurer files a complaint"), § 13A(4) is of more restrictive scope ("[w]henever an insurer files a complaint *to reduce or discontinue an employee's benefits*" [emphasis added]).

[14]The reviewing board's discretionary authority to hold a contradictory regulation inapplicable to proceedings such as this is expressly granted by G. L. c. 152, § 5. See *Corriveau* v. *Home Ins. Co.*, 43 Mass. App. Ct. 924, 925-926 (1997). Cf. *LaRoche* v. *Flynn*, 55 Mass. App. Ct. 419, 420-421 (2002) (a rule or regulation may not override a statute). The dissenting member's reliance on this court's ruling in *Gonzalez's Case*, 41 Mass. App.

insurer seeks but fails to achieve substantial penalties against the employee.[15]

The reviewing board was additionally correct in finding support for its fee decision in the general principle set forth in our decisions in *Connolly's Case*, 41 Mass. App. Ct. 35, 38 (1996), and *Cruz's Case*, 51 Mass. App. Ct. 26, 28 (2001) ("In worker's compensation cases . . . the employee is considered the prevailer if he 'succeeds on any significant litigation issue, achieving "some of the benefit" sought in the controversy' ") (citation omitted). Accord *Conroy's Case*, 61 Mass. App. Ct. 268, 273-274 (2004). Cf. *Kelly's Case*, 394 Mass. 684, 687 (1985)

---

Ct. 39 (1996), for the proposition that 452 Code Mass. Regs. § 1.19(4) governs all meanings of "prevail" as used in § 13A(5), was misplaced, because, unlike the employee here — who was the beneficiary of a conference award of benefits ultimately totaling over $30,000 — *Gonzalez* was a case "where no worker's compensation [benefits] ha[d] been ordered [or received] at any stage of the statutory proceedings." *Id.* at 42. The reviewing board's decision in this case, in conjunction with that in *Talbot* (see note 10, *supra*), can be viewed as establishing administrative policy by adjudicatory proceedings which effectively restricts the reach of § 1.19(4) to cases involving ordinary compensation claims and discontinuance complaints. Cf. *Massachusetts Elec. Co.* v. *Department of Pub. Util.*, 383 Mass. 675, 679 (1981); *Fitchburg Gas & Elec. Light Co.*, v. *Department of Telecommunications & Energy*, 440 Mass. 625, 635-636 (2004). We further note the contrast between the nonexclusive language of § 1.19(4) ("the claimant shall be deemed to have prevailed . . . when"), and other sections of the regulations (e.g., "*Action against a Third Person* as used in M. G. L. c. 152, § 41, *shall be limited to*" certain types of actions; "*Cash Award* as used in M. G. L. 152, § 13A[10], *shall mean*" certain specifically enumerated forms of benefits; "*Hearing* as used in M. G. L. c. 152, § 11A[2], *shall be restricted to*" certain proceedings, all in 452 Code Mass. Regs. § 1.02 [emphasis added]), which demonstrate that the commissioner of the DIA knew how to narrow and make precise the scope and meaning of terms used in DIA regulations (see G. L. c. 152, § 5) when he so intended.

[15]See, for collateral confirmatory principles, *Davey Bros., Inc.* v. *Stop & Shop, Inc.*, 351 Mass. 59, 63 (1966) (statutes imposing fines or penalties are to be construed strictly and not extended by implication); *Massachusetts Auto Body Assn., Inc.* v. *Commissioner of Rev.*, 409 Mass. 770, 781 (1991) ("an agency's interpretation of its own rule is entitled to deference. We will overturn such an interpretation only if it is arbitrary, unreasonable, or inconsistent with the plain terms of the rule itself"); *Boston Police Superior Officers Fedn.* v. *Boston*, 414 Mass. 458, 462 (1993), quoting from *Northbridge* v. *Natick*, 394 Mass. 70, 74 (1985) (an agency's construction of its own regulations " 'is one to which considerable deference is due' . . . [and] so long as the agency's interpretation of its regulation[] and statutory mandate is rational, and adhered to consistently, it should be respected").

(G. L. c. 152 should be construed whenever possible in favor of employees). The reviewing board accurately described "the denial of the insurer's § 14 fraud complaint [as] an unequivocal and unambiguous success on a significant litigation issue," because, " '[i]f the employee's avoiding thousands of dollars of costs and penalties and criminal prosecution is not "some of the benefit" sought in the controversy,' we do not know what is."[16]

Although it is unnecessary to our analysis, we note that the reviewing board's common-sense view of what "prevailing" encompasses would apply here, a fortiori, because the employee's actual success surpassed the mere avoidance of § 14 consequences, in so far as the administrative judge did not order refund or repayment of the substantial monetary benefits the employee had received pursuant to the award made by the February, 1997, conference order (cf. *Conroy's Case*, 61 Mass. App. Ct. at 277); the insurer never sought or obtained a recoupment order pursuant to G. L. c. 152, § 11D(3); and the insurer has since lost the ability to seek recoupment of those payments.[17]

Accordingly, we affirm the decision of the reviewing board dated August 10, 2001.

*So ordered.*

---

[16]In the second clause of this sentence, the reviewing board was quoting from *Talbot* v. *Stanton Tool & Mfg. Inc.*, 11 Mass. Workers' Comp. Rep. 528, 530 (1997), the agency precedent that the majority held had established the proposition that "an employee is entitled to an attorney's fee when he successfully defends against an insurer's claim of § 14(2) fraud." See note 10, *supra*. The "criminal prosecution" reference alludes to G. L. c. 152, § 14(3), which makes any person knowingly involved in fraudulent conduct in the course of seeking workers' compensation benefits subject to imprisonment for up to five years, a fine of up to $10,000, and a restitution order for any financial loss caused.

[17]While no statute provides a limitations period for recoupment actions by insurers under G. L. c. 152, the six-year statute of limitations in G. L. c. 260, § 2, would appear to apply, covering as it does quasi contractual actions to recover moneys paid by mistake. See *New Bedford* v. *Lloyd Inv. Assocs., Inc.* 363 Mass. 112, 118 (1973).