MARION ANDREWS *vs.* DIVISION OF MEDICAL ASSISTANCE
& another.[1]

No. 06-P-221.

Suffolk. November 17, 2006. - February 14, 2007.

Present: DOERFER, KATZMANN, & VUONO, JJ.·

*Division of Medical Assistance. Massachusetts Medical Assistance Program. Administrative Law,* Judicial review.

The division of medical assistance, in determining the plaintiff's eligibility to receive assistance for nursing home care, reasonably applied valid agency rules to deny the plaintiff's deduction from her estate of money paid by the plaintiff to her daughter and son-in-law on account of labor they had performed to renovate her house, where the plaintiff failed to sustain her burden of proof to persuade the hearing officer that she had intended, at the time that the services were rendered, to pay for the work. [231-233]

CIVIL ACTION commenced in the Superior Court Department on January 15, 2004.

The case was heard by *Christopher J. Muse,* J., on motions for judgment on the pleadings.

*Jeffrey A. Bloom* for the plaintiff.

*Neil P. Olson,* Assistant Attorney General, for the defendants.

DOERFER, J. Under a Federal program, administered through the State by the division of medical assistance (DMA),[2] elders who are impoverished can receive assistance for nursing home care. See 42 U.S.C. §§ 1396 et seq. (2000); G. L. c. 118E, §§ 1, 9A; 130 Code Mass. Regs. §§ 501 et seq. (2002); 130 Code Mass. Regs. §§ 520 et seq. (2003). See also *Tarin* v. *Commissioner of the Div. of Med. Assistance,* 424 Mass. 743, 746-750 (1997) (describing general statutory scheme); *Centennial Healthcare Inv. Corp.* v. *Commissioner of the Div. of Med.*

---

[1]Commissioner of the division of medical assistance.

[2]In 2003, the DMA was renamed the office of Medicaid.

*Assistance*, 61 Mass. App. Ct. 320, 321 n.3 (2004) (same). One of the important issues in administering this program is determining how much of an elder's income and assets is available to pay for her care. See 130 Code Mass. Regs. § 520.007 (2002). See also *Tarin* v. *Commissioner of the Div. of Med. Assistance, supra* at 747-750 (assets and income considered for the purposes of Medicaid eligibility and benefits determination). In general, assets held by an individual must be applied to the cost of nursing home care before the State begins to subsidize such costs.

Many elders have accumulated substantial equity in their homes, not only because their mortgages have been paid off but also because of generally rising values of real estate in modern times. That equity must be counted as available for their care and applied to the cost of nursing home services before the State will begin subsidizing such services. See 130 Code Mass. Regs. § 520.007(G) (1999).

Understandably, an elder would prefer to pass along accumulated wealth to the next generation rather than use it to provide her own nursing home expenses, especially if a State program is available to help pick up the cost. Consequently, strict rules have been promulgated which have the effect of limiting the amount of assets that applicants can dispose of without affecting their eligibility for assistance.

Money that leaves the estate of an elder as payment for goods or services is regarded as legitimately reducing the estate for the purpose of determining eligibility for assistance. But where the services in question are rendered by a family member, naturally a question arises whether such services would have been rendered gratuitously as a family accommodation, based on love and affection, or whether a genuine transaction occurred with expectation of payment for value given and received. In order to remove the temptation to transfer money to a relative gratuitously, under the guise of a monetary transaction for services rendered, the DMA requires reliable proof that the transfer genuinely was in payment for value received *and that it was intended as such at or before the time the services were rendered.* See 42 U.S.C. § 1396p(c); G. L. c. 118E, § 28; 130 Code Mass. Regs. § 520.018 (2000); 130 Code Mass. Regs. § 520.019 (1999).

At issue in this case is whether money that was paid by Marion Andrews (plaintiff) to her daughter and son-in-law (Tekulas) on account of labor they performed to renovate her house properly could be deducted from her estate to determine her eligibility for assistance. We conclude that valid agency rules reasonably were applied to deny the deduction, and eligibility for assistance properly was determined.

*Facts.* In 1995, due to declining health, the plaintiff moved from her old Victorian house in Swampscott to the home of the Tekulas. For six years, the plaintiff lived with the Tekulas. In December, 2000, Mrs. Tekula, on the plaintiff's behalf, obtained a $95,000 mortgage on the Swampscott house. In December, 2001, the plaintiff moved to a nursing home as a private pay resident.

Mrs. Tekula needed additional funds to provide for her mother's nursing home care, and so, in the summer of 2001, she began to look into the possibility of selling the Swampscott house. She learned that, due to the dilapidated condition of the house, it would sell significantly below the fair market value. As they wanted to maximize the value of the house in order to maximize the amount of money available to provide for the plaintiff, the Tekulas decided to renovate it in order to restore the home to its former Victorian glory and to obtain the best possible price for it. They spent the next fourteen to eighteen months working on the renovations (mainly painting, tiling, clean-up, and minor repairs), spending approximately $2,600 in paint and materials to accomplish the renovation.

In October, 2002, the house sold for $429,000, substantially more than either a prerenovation offer ($150,000 to $175,000) or a real estate appraiser's estimation of its value, prerenovation ($225,000). At the time of the closing, the Tekulas became aware of the availability of a MassHealth (Medicaid) subsidy if the value of the plaintiff's assets was low enough after the sale. While the sale generated a pool of money to pay for a portion of the plaintiff's nursing home care, the Tekulas claimed $100,000 as payment for their services and materials.

In July, 2003, the plaintiff applied for MassHealth coverage. In determining her eligibility, the DMA determined that the amount paid from her estate to the Tekulas had to be disregarded

and considered still to be part of her estate in calculating the extent to which she was entitled to benefits.

*Discussion.* We first note that the plaintiff had the burden of proof to persuade the hearing officer that she intended, at the time the services were rendered, to pay for the work. See 130 Code Mass. Regs. § 520.019(C), (F). Moreover, the burden is on the appealing party to demonstrate the invalidity of the administrative determination. See *Fisch* v. *Board of Registration in Med.*, 437 Mass. 128, 131 (2002); *Faith Assembly of God of S. Dennis & Hyannis, Inc.* v. *State Bldg. Code Commn.*, 11 Mass. App. Ct. 333, 334 (1981); *Haverhill Mun. Hosp.* v. *Commissioner of the Div. of Med. Assistance*, 45 Mass. App. Ct. 386, 390 (1998). It is rare that a party with the burden of proof successfully can claim that she had met the burden as a matter of law. Thus we look at the record to determine if, considering the evidence as a whole, the decision of the hearing officer was arbitrary or capricious and whether the decision took into account all of the facts that fairly supported the plaintiff's claim as well as those that fairly detracted from them. See G. L. c. 30A, § 14. See also *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 252 n.6, 257 (1996) (judicial review of an agency decision is highly deferential); *Foxboro Harness, Inc.* v. *State Racing Commn.*, 42 Mass. App. Ct. 82, 86 (1997) ("[t]he reviewing court, after considering the entire record, must sustain the commission's decision unless it is unsupported by substantial evidence"); *Conroy's Case*, 61 Mass. App. Ct. 268, 273 (2004) (agency's interpretation of its own rule is entitled to great weight).

In evaluating this claim, the DMA utilized a Health Care Financing Administration (HCFA)[3] interpretive communication which states that services rendered to an elder by a family member are presumed to be gratuitous and without expectation of compensation unless the applicant can prove that he or she intended, at the time those services were rendered, to pay for them. See State Medicaid Manual, HCFA Transmittal No. 64, § 3258.1(A)(1), available only at

---

[3]The HCFA is the Federal agency "charged with administering the Medicaid program and promulgating its implementing regulations." *Rudow* v. *Commissioner of the Div. of Med. Assistance*, 429 Mass. 218, 227 n.14 (1999).

http://www.cms.hhs.gov/Manuals/PBM/list.asp?listpage2 (last visited February 12, 2007). Under the definition of fair market value, the transmittal notes, inter alia, that a *"transfer for love and consideration, for example, is not considered a transfer for fair market value. Also, while relatives and family members legitimately can be paid for care they provide to the individual, HCFA presumes that services provided for free at the time were intended to be provided without compensation. Thus, a transfer to a relative for care provided for free in the past is a transfer of assets for less than fair market value.* However, an individual can rebut this presumption with tangible evidence that is acceptable to the State. For example, you may require that a payback arrangement had been agreed to in writing at the time services were provided." (Emphasis supplied.) *Ibid.* Here, the hearing officer validly relied on this transmittal as an exhibit in the hearing. See 130 Code Mass. Regs. § 610.082(A) (2002) ("hearing officer's decision is based upon evidence, testimony, materials, and legal rules, presented at the hearing, including the Division's interpretation of its rules, policies, and regulations"); 130 Code Mass. Regs. § 610.082(C)(3)(3) (2002) ("The hearing officer shall give due consideration to Policy Memoranda and any other Division representations and materials containing legal rules, standards, policies, procedures, or interpretations as a source of guidance in applying a law or regulation").

In response to an information request from the MassHealth caseworker, the Tekulas supplied a one-page invoice of the labor and supplies. The invoice, dated the same date as the closing, was submitted on the official letterhead of the high technology company where Mr. Tekula worked. This company was not involved in the business of home renovation and had no connection to this housing project. Except for the affidavits of Mr. and Mrs. Tekula, there was no other documentation of labor or expenses nor any estimate from a contractor relating to the fair market value of such services and renovations.

In fact, there was no evidence at all that the plaintiff intended to pay her daughter and son-in-law for their labor except an inference that might be drawn that they would not have taken leaves of absences from their respective jobs and spent one and one-half years working full time on the renovations if they did

not expect to be paid. But there was no evidence about other means available to the Tekulas to support themselves at the time of the renovations.

Other inferences relating to the intentions of the plaintiff and the expectations of her daughter about payment for the work done to prepare the house for sale were possible and supported by direct evidence. For example, the hearing transcript makes clear that the original motivation of the daughter was to sell the plaintiff's house to maximize the funds available to meet the needs of the plaintiff in her old age and to pay for her nursing facility care. There was also a need to generate money to pay off the plaintiff's substantial debts, including the outstanding mortgage and credit card debt.

Furthermore, the Tekulas admitted that they did not know about MassHealth until the closing, which was the same date that the invoice indicated. The hearing officer did not err in describing the invoice as "misleading." While the Tekulas may have put a great deal of time and effort into the renovations, we cannot fairly say that they carried their burden of showing that the plaintiff had the intent at the outset, or at any time during which the services were being rendered, to pay the Tekulas for those services. In these circumstances, the record contains substantial evidence that the transfer of $100,000 was meant to lower the plaintiff's assets in order to qualify for MassHealth coverage and did not show satisfaction of a pre-existing agreement to pay for those services.

The value of the services rendered and the reasonableness of the amount paid for them are separate issues and are entirely independent of the question of the intent of the applicant to pay for them. To avoid overinflating the value of the services, once a contemporaneous intent to pay has been established, the applicant has the burden to establish that the payment was fair and reasonable and not excessive. See 130 Code Mass. Regs. § 520.019(F) (1999). But here, where the plaintiff does not carry the burden of proof on the issue of intent to pay, the reasonableness of the late blooming claim for those services is beside the point.

*Conclusion.* The Superior Court judge properly found that the decision of the DMA was based on substantial evidence and

that there was no error of law. The defendants' motion for judgment on the pleadings properly was allowed.

*Judgment affirmed.*