## Mary Shelales *vs.* Director of the Office of Medicaid.

No. 08-P-2052.

Middlesex. September 15, 2009. - October 30, 2009.

Present: Rapoza, C.J., Grasso, & Milkey, JJ.

*Medicaid. Administrative Law,* Regulations, Agency's interpretation of statute, Judicial review. *Regulation.*

A Superior Court judge correctly affirmed a decision of a board of hearings in the Office of Medicaid (department) that the plaintiff was ineligible for Massachusetts Medicaid program long-term care benefits for a period of time commencing on a certain date, due to a disqualifying transfer of assets, where the department's interpretation of its own regulation was reasonable and did not conflict with governing Federal Medicaid law. [637-642]

Civil action commenced in the Superior Court Department on November 14, 2007.

The case was heard by *Timothy Q. Feeley,* J., on a motion for judgment on the pleadings.

*Arthur P. Bergeron* for the plaintiff.

*Marina Moriarty,* Assistant Attorney General, for the defendant.

Grasso, J. Mary Shelales appeals from a judgment of the Superior Court affirming the decision of the Office of Medicaid (department) board of hearings that Shelales was ineligible for Massachusetts Medicaid program (MassHealth) long-term care benefits for a period of 164 days, commencing on June 28, 2007, due to a disqualifying transfer of assets. On appeal, Shelales argues that (1) the department incorrectly calculated the commencement date for the penalty period of ineligibility as beginning on June 28 rather than on January 12, 2007, and (2) the department's interpretation of its applicable regulation is inconsistent with governing Federal Medicaid law. We affirm.

1. *Background.* The controlling facts are not in dispute. On December 7, 2006, Shelales entered St. Patrick's Manor, a nursing home in Framingham, for medically necessary long-term care. On January 11, 2007, she transferred $41,993 from her bank account to her two children as a gift. That same day, she also transferred $50,447 to St. Patrick's Manor to prepay her nursing home expenses until July 2, 2007.[1]

On April 30, 2007, Shelales applied for MassHealth benefits to cover her nursing home expenses and requested coverage retroactive to January 11, 2007. The department denied Shelales's application, concluding that her January 11 transfer of $41,993 to her children rendered her ineligible for long-term care benefits for a period of 164 days commencing on June 28, 2007, the first day after her prepayment of expenses was exhausted.[2]

Shelales requested a hearing, and a hearing officer affirmed the denial of benefits. Shelales sought judicial review in the Superior Court pursuant to G. L. c. 30A, § 14. A Superior Court judge affirmed, and this appeal ensued.

2. *Discussion.* MassHealth is a cooperative Federal and State undertaking that provides payment for medical services to eligible individuals and families who are unable to pay for their own medical care. See G. L. c. 118E, § 9; *Haley* v. *Commissioner of Pub. Welfare,* 394 Mass. 466, 467 (1985). "[E]stablished[] pursuant to and in conformity with" the Federal Medicaid program, MassHealth must meet the requirements of Federal law in order to receive Federal financial reimbursement. G. L. c. 118E, § 9, inserted by St. 1993, c. 161, § 17. See *Youville Hosp.* v. *Commonwealth,* 416 Mass. 142, 146 (1993).

The payment of long-term care expenses for individuals in nursing homes ("nursing-facility services") is among the covered medical services of MassHealth. 130 Code Mass. Regs. § 519.006(A)(2) (2004). To be eligible for MassHealth long-term care coverage, an individual must meet a number of criteria including having $2,000 or less in countable assets.[3] 130 Code

---

[1]Although Shelales estimated that her payment would last until July 2, for reasons not clear in the record, her prepayment only lasted until June 27, 2007.

[2]The 164-day ineligibility period commenced on June 28 and ended on December 9, 2007.

[3]Additional factors for eligibility include whether the individual is over

Mass. Regs. § 519.006 (2006). As part of its determination of eligibility for long-term care benefits, the department enumerates certain disqualifying transfers of resources. 130 Code Mass. Regs. § 520.019(C) (2006). Under 42 U.S.C. § 1396p(c) (2006), G. L. c. 118E, § 28, and the implementing State regulations, 130 Code Mass. Regs. §§ 520.018 (2006) and 520.019 (2006), the department will deny an application for nursing home benefits when the applicant has transferred an asset for less than fair market value during a defined "look-back period." For transfers such as Shelales's transfer to her children, which occurred after February 8, 2006, the look-back period is sixty months preceding the date when the applicant is both a nursing facility resident and has applied for or is receiving MassHealth standard medical assistance.[4] See 130 Code Mass. Regs. § 520.019(B)(2) (2006). See also 42 U.S.C. § 1396p(c)(1)(A) & (B). If a disqualifying transfer has occurred, the applicant is ineligible for nursing facility services for a number of months equal to the total value of the transferred assets divided by the average monthly cost to a private patient receiving nursing home services in Massachusetts (penalty period). 130 Code Mass. Regs. § 520.019(G)(1) (2006).

The parties do not dispute that Shelales made a disqualifying transfer of assets to her children on January 11, 2007. Nor do they dispute that, under the governing formula, the period of ineligibility for long-term care benefits resulting from that transfer is 164 days. What is disputed is the date on which the penalty period commences to run. The department maintains that the penalty period did not commence until June 28, 2007, the day after Shelales's prepayment of medical services was exhausted. Shelales maintains that the penalty period began to run on January 12, 2007, the day following the transfer of her assets to her children.[5]

sixty-five, is medically eligible for nursing-facility care, and has not transferred resources for the sole purpose of obtaining MassHealth coverage. See 130 Code Mass. Regs. § 519.006 (2006).

[4]MassHealth standard medical assistance encompasses a wide range of benefits, including nursing-facility services. See 130 Code Mass. Regs. § 520.019(A) (2006). Denial of eligibility for nursing facility services does not affect an individual's eligibility for other MassHealth benefits. See 130 Code Mass. Regs. § 520.018(C) (2006).

[5]Under Shelales's proffered interpretation, the 164-day ineligibility period

Both the department and Shelales agree that the governing regulation is set forth in 130 Code Mass. Regs. § 520.019(G)(3) (2006), which provides:

> "For transfers occurring on or after February 8, 2006, the period of ineligibility begins on the first day of the month in which resources were transferred for less than fair-market value *or the date on which the individual is otherwise eligible for MassHealth payment of long-term care services, whichever is later*"[6] (emphasis added).

Their dispute centers on the regulatory language "the date on which the individual is otherwise eligible for MassHealth payment of long-term care services." *Ibid.* Under the department's interpretation of that language, the penalty period for Shelales's application did not commence until June 28, 2007.

Focusing on the words "otherwise eligible," Shelales contends that she was otherwise eligible for payment of MassHealth long-term care services on January 12, 2007, because, aside from the disqualifying transfer to her children the previous day, she met all other criteria for payment on that date.[7] For its part, the department reasons that the words "otherwise eligible" must be read together with the words "MassHealth payment" and that Shelales was not eligible for MassHealth payment of long-term care services until June 28, 2007, because she had prepaid the nursing home for services until that date.[8] Until her prepayment was exhausted, Shelales was not eligible for MassHealth "payment" of her long-term care services because she was, in effect, "self-insured" and those services had already been paid.

would have run out at approximately the same time that her prepayment to the nursing home was exhausted.

[6]The department's regulation tracks the governing Federal law, which provides that the ineligibility period starts "the first day of a month during or after which assets have been transferred for less than fair market value, or the date on which the individual is eligible for medical assistance under the State plan . . . , whichever is later." 42 U.S.C. § 1396p(c)(1)(D)(ii).

[7]The parties agree that, aside from the disqualifying transfer, Shelales was eligible for payment of benefits on January 12, 2007, as her countable assets were less than $2,000, and she met other eligibility criteria. See note 3, *supra.*

[8]The motion judge considered, but did not resolve, the issue whether Shelales's prepayment to the nursing home remained a "countable asset" until consumed, whether on a weekly or monthly basis. We also need not address that issue.

We agree with the thoughtful decision of the Superior Court judge that the department's interpretation of its own regulation is reasonable and accords with the governing Federal legislation. See *Taylor* v. *Housing Appeals Comm.*, 451 Mass. 149, 154 (2008) (administrative agency's reasonable interpretation of statute it is charged with enforcing is entitled to substantial deference). The department's determination that Shelales did not become eligible for payment of her long-term nursing care until her prepayment to the nursing home was exhausted is a reasonable interpretation of the pertinent regulation that accords with both its plain language and the intent of the governing legislation. See *Youville Hosp.* v. *Commonwealth*, 416 Mass. at 146.

Even were we to assume that Shelales's suggested interpretation of the regulation, read broadly, is reasonable, that interpretation is not the *only* reasonable way to construe the regulation and the governing Federal law. Where ambiguities exist, a reviewing court must show deference to the experience, technical competence, specialized knowledge, and discretionary authority conferred upon the regulatory agency. See *Athol Daily News* v. *Board of Review of the Div. of Employment & Training*, 439 Mass. 171, 174 (2003); G. L. c. 30A, § 14(7). When an agency's interpretation is reasonable, we afford the agency "considerable leeway" in interpreting a statute it is charged with enforcing, unless the statute unambiguously bars the agency's approach. *Goldberg* v. *Board of Health of Granby*, 444 Mass. 627, 633 (2005) (citation omitted). We will not overturn an agency's interpretation of its own regulation and statutory mandate unless that "interpretation is patently wrong, unreasonable, arbitrary, whimsical, or capricious." *Box Pond Assn.* v. *Energy Facilities Siting Bd.*, 435 Mass. 408, 416 (2001) (citation omitted). Especially is this so when the case involves interpretation of a complex statutory and regulatory framework such as Medicaid. See *Kozloski* v. *Contributory Retirement Appeal Bd.*, 61 Mass. App. Ct. 783, 786 (2004) (great deference afforded to agency's expertise when it is charged with applying difficult and complex set of regulations).

We discern no unreasonableness in the department's interpretation of its regulation. Indeed, its interpretation more reasonably comports with the Federal and State legislative and regulatory

scheme for providing a needs-based program aimed at maximizing the use of personal funds for long-term care before relying on public funds. "Medicaid is, and always has been, a program to provide basic health coverage to people who do not have sufficient income or resources to provide for themselves. When affluent individuals use [asset reduction] 'techniques' to qualify for the program, they are diverting scarce Federal and State resources from low-income elderly and disabled individuals, and poor women and children." *Cohen* v. *Commissioner of the Div. of Med. Assistance,* 423 Mass. 399, 403-404 (1996), quoting from H.R. Rep. No. 265, 99th Cong., 1st Sess., pt. 1, at 72 (1985).

We also discern no conflict between the department's interpretation of its regulation and the Deficit Reduction Act of 2005, P.L. 109-171, 120 Stat. 4 (2006). Congress recognized that most penalty periods for disqualifying transfers of assets would be rendered meaningless if the disqualification period were to expire before long-term care was ever needed. See H.R. Rep. No. 109-276, at 387, 505 (2005). To close this loophole, the "eligible for medical assistance under the State plan" language was added to the Federal statute to offer a later date for commencement of the penalty period.[9] 42 U.S.C. § 1396p(c)(1)(D)(ii). Nothing in the Federal legislation precludes a State plan that commences the ineligibility period for disqualifying transfers by reference to whether the applicant is "otherwise eligible for [State] payment of long-term care services." 130 Code Mass. Regs. § 520.019(G)(3) (2006). Indeed, the department's interpretation of its parallel regulation is consonant with the expressed purpose of delaying or even obviating the need for taxpayer-financed care. By extending the commencement date of the disqualification period, the regulation discourages the transfer of assets that could have been used to pay privately for long-term care and prevents placement of the burden of payment for those services on the taxpayer. See *Doherty* v. *Director of the Office of*

___

[9]Prior to enactment of the Deficit Reduction Act, the commencement date of Shelales's penalty period of ineligibility would have been January 1, 2007, because Federal law and implementing Massachusetts regulations then in existence established the starting date for the penalty period only by reference to the first day of the month during or after the assets have been transferred for less than fair market value.

*Medicaid,* 74 Mass. App. Ct. 439, 443 (2009) (expressed intent of Legislature that Medicaid benefits be available only to those who genuinely lack sufficient resources).

*Judgment affirmed.*