JANETTE FORMAN[1] vs. DIRECTOR OF THE OFFICE OF
MEDICAID.

No. 10-P-728.

Bristol. January 13, 2011. - April 6, 2011.

Present: KAFKER, COHEN, & RUBIN, JJ.

*Medicaid. Administrative Law,* Judicial review, Regulations. *Contract. Value.*

Discussion of the substantial evidence standard of review of administrative
decisions. [221]

Discussion of State regulations under which MassHealth makes determina-
tions regarding disqualifying transfers of assets for Medicaid purposes.
[221-223]

The Office of Medicaid Board of Hearings (board) properly denied an ap-
plication for nursing home benefits on the basis of the board's conclusion
that a lump-sum caregiver contract between the applicant and her daughter
was a disqualifying transfer of resources, where the board reasonably
determined, based on substantial evidence, that the contract was not for
fair market value. [223-225]

CIVIL ACTION commenced in the Superior Court Department on
July 29, 2009.

The case was heard by *Richard T. Moses,* J., on a motion for
judgment on the pleadings.

*Eric D. Correira* for the plaintiff.

*David R. Marks,* Assistant Attorney General, for the defendant.

KAFKER, J. At issue is whether a particular lump-sum care-
giver contract for future services between a mother and daughter
was a disqualifying transfer of resources for Medicaid purposes,

[1]Janette Forman died on September 11, 2009. Her daughter, Fran Rachlin,
was Forman's duly authorized attorney-in-fact during her lifetime and was ap-
pointed executrix of her estate on November 20, 2009. A motion to substitute
was allowed in the Superior Court, but the case continued to judgment there
with its original caption, which we also retain. Wherever we refer to legal ac-
tions being taken by the mother in Superior Court or in this court, we are refer-
ring to actions filed by the daughter as the mother's attorney-in-fact and executrix.

pursuant to 130 Code Mass. Regs. § 520.007(J)(4) (2006). The mother, plaintiff Janette Forman (mother), was a nursing home resident who applied to the defendant, the Director of the Office of Medicaid, for MassHealth[2] benefits to cover the cost of her long-term nursing care. MassHealth denied the mother's application for nursing home benefits from October 28, 2008, to January 9, 2009, due to a disqualifying transfer of $20,000 from the mother to her daughter, Fran Rachlin (daughter). The mother appealed to the Office of Medicaid Board of Hearings (board), which also denied the application. A judge of the Superior Court affirmed that decision, and the plaintiff appealed. We affirm.

*Facts.* On July 9, 2007, the mother entered into a personal services contract with her daughter. The daughter, who had previously provided certain services to the mother without compensation,[3] was also the mother's attorney-in-fact pursuant to a durable power of attorney. At the time that the contract was executed, the mother was eighty-three years old and her health had started to deteriorate to the point that it was "increasingly difficult for her to complete everyday tasks alone." Under the terms of the contract, the daughter agreed to provide the mother with room, board, and certain personal care services, including preparation of all meals, housekeeping, household laundry, and transportation to doctors' appointments.

In exchange for these services, the mother transferred $20,000 to the daughter in a lump-sum payment upon execution of the contract. As part of the contract, the daughter could terminate the contract if the mother "engage[d] in behavior that [wa]s a threat to the mental and/or physical health or safety of herself or others living on the premises" or was "no longer able to 'assist'[4] . . . with her own personal hygiene needs such as bathing, dressing, eating, toileting." If the daughter terminated the contract for either of these reasons, or if the mother died, the

---

[2] "The MassHealth agency is responsible for the administration and delivery of health care services to low- and moderate-income individuals . . . ." 130 Code Mass. Regs. § 515.002(A) (2008).

[3] The nature and extent of the daughter's services prior to the date of the contract are unclear from the limited record before us.

[4] According to the contract, "the term 'assist' means walk with a walker to the bathroom for a bath, and sit up in bed or in a chair unassisted, raising her arms upward to put on a sweater."

daughter was entitled to "retain the full amount of all pay-ments" made by the mother to the daughter, regardless of when termination of the contract or the mother's death occurred.

The contract did not expressly contain any language quantify-ing the amount of hours to be worked by the daughter per week or any other measurable period. Additionally, the contract had no specific duration. Rather, it was to "continue in effect until the services and/or level of care assessed [as of the date of the contract] vary or until terminated." There was also no provision about the quality of the services to be provided to the mother.

The daughter, who was a full-time teacher, testified that she slept at her mother's home and prepared lunch and dinner for her. She also ordered and picked up her mother's prescriptions, bathed her, and performed housekeeping chores.

On August 6, 2008, a little more than a year after the contract between the mother and the daughter was executed, the mother was admitted into a nursing home. The mother applied to Mass-Health on November 10, 2008, requesting MassHealth nursing home benefits retroactive to October 28, 2008. MassHealth declared the mother ineligible for benefits between October 28, 2008, and January 9, 2009, based upon the mother's $20,000 lump-sum payment to the daughter. MassHealth determined this ineligibility period by dividing the amount of the disqualifying transfer, $20,000, by the average daily private nursing home rate, $267.

The mother appealed MassHealth's denial of nursing home benefits before January 10, 2009, to the board. On June 30, 2009, the board denied the mother's appeal, affirming Mass-Health's determination that the mother's $20,000 lump-sum payment to the daughter was a disqualifying transfer under 130 Code Mass. Regs. § 520.007(J)(4). The board concluded that "while the [c]ontract may be a legal one, it is not for fair market [value] as it is not both 'legally and reasonably enforceable by the applicant.' " The hearing officer concluded that the contract between the mother and the daughter was "merely a device to preserve the [mother's] assets for her family while she prepare[d] to apply for public assistance."

The mother subsequently appealed the board's decision to the Superior Court pursuant to G. L. c. 30A, § 14, and moved for

judgment on the pleadings. On April 7, 2010, a Superior Court judge affirmed the board's decision, holding that "substantial evidence supports the hearing officer's conclusion that [the mother's] payment of $20,000.00 to [the daughter] was a disqualifying transfer because the [c]ontract was not reasonably enforceable, and would support the same conclusion because the [c]ontract had no ascertainable fair-market value." The mother now appeals to this court, contending that the board's decision was not supported by substantial evidence.

*Standard of review.* The mother, as appellant, has the burden of proof "to demonstrate the invalidity of the administrative determination." *Andrews* v. *Division of Med. Assistance,* 68 Mass. App. Ct. 228, 231 (2007). In evaluating the administrative determination, the court is also to "give 'due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.' " *Springfield* v. *Department of Telecommunications & Cable,* 457 Mass. 562, 567 (2010), quoting from G. L. c. 30A, § 14(7). This means that "[a] court may not displace an administrative board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Embers of Salisbury, Inc.* v. *Alcoholic Bevs. Control Commn.,* 401 Mass. 526, 529 (1988), quoting from *School Comm. of Wellesley* v. *Labor Relations Commn.,* 376 Mass. 112, 120 (1978).

The agency's decision must, however, be supported by "substantial evidence," which is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 14(7), § 1(6). In reviewing an agency's decision for substantial evidence, "[t]he court shall make the foregoing determinations upon consideration of the entire record, or such portions of the record as may be cited by the parties." *Fortier* v. *Department of Pub. Utils.,* 342 Mass. 728, 734 (1961), quoting from G. L. c. 30A, § 14.

In sum, reasonable interpretations by an agency of its governing law, which are supported by substantial evidence, must be respected.

*Overview of Medicaid program.* Medicaid "is a cooperative Federal and State program which provides payment for medical

services to eligible individuals and families." *Haley* v. *Commissioner of Pub. Welfare,* 394 Mass. 466, 467 (1985). The Medicaid program is specifically designed to meet the medical needs of individuals "whose income and resources are insufficient to meet the costs of necessary medical services[.]" 42 U.S.C. § 1396(1) (2006). As previously noted in the margin, MassHealth is the agency within the Commonwealth "responsible for the administration and delivery of health-care services to low- and moderate-income individuals." 130 Code Mass. Regs. § 515.002(A). To receive Federal funding, MassHealth regulations and practices must comply with all requirements imposed by Federal Medicaid law. *Haley, supra* at 467, citing 42 U.S.C. § 1396. See *Cohen* v. *Commissioner of Div. of Med. Assistance,* 423 Mass. 399, 402 (1996); 130 Code Mass. Regs. § 515.002(B).

MassHealth provides nursing home benefits for individuals who meet certain criteria. "Understandably, an elder would prefer to pass along accumulated wealth to the next generation rather than use it to provide her own nursing home expenses, especially if a State program is available to help pick up the cost. Consequently, strict rules have been promulgated which have the effect of limiting the amount of assets that applicants can dispose of without affecting their eligibility for assistance." *Andrews,* 68 Mass. App. Ct. at 229. Among other requirements for eligibility, applicants must have no more than $2,000 in "countable assets." 130 Code Mass. Regs. § 520.003(A) (2004). See *Shelales* v. *Director of the Office of Medicaid,* 75 Mass. App. Ct. 636, 637 (2009).

"As part of its determination of eligibility for long-term care benefits, the department enumerates certain disqualifying transfers of resources." *Id.* at 638, citing 130 Code Mass. Regs. § 520.019(C) (2006). MassHealth reviews an applicant's transfers of resources during a statutorily-created "look-back period" prior to the individual's application. "Under 42 U.S.C. § 1396p(c) (2006), G. L. c. 118E, § 28, and the implementing State regulations, 130 Code Mass. Regs. §§ 520.018 (2006) and 520.019 (2006), the department will deny an application for nursing home benefits when the applicant has transferred an asset for less than fair market value . . . [within] sixty months preceding the date when the applicant is both a nursing facility

resident and has applied for or is receiving MassHealth standard medical assistance." *Shelales, supra* at 638. MassHealth regulations stipulate that a transfer stemming from a contract for future services to an applicant is a "disqualifying transfer of assets to the extent that the transaction does not have an ascertainable fair-market value or if the transaction is not embodied in a valid contract that is legally and reasonably enforceable by the applicant." 130 Code Mass. Regs. § 520.007(J)(4). If MassHealth determines a disqualifying transfer has occurred, it deems the applicant ineligible for nursing home benefits for a period of time "equal to the total value of the transferred assets divided by the average monthly cost to a private patient receiving nursing home services in Massachusetts." *Shelales, supra* at 638, citing 130 Code Mass. Regs. § 520.019(G)(1) (2006).

*Application of the substantial evidence test.* We conclude that there was substantial evidence in the record to affirm the board's determination that the mother's lump-sum payment to the daughter was a disqualifying transfer under 130 Code Mass. Regs. § 520.007(J)(4), because the July 9, 2007, personal services contract does not have an ascertainable fair market value. We reach this conclusion based on our review of the contract and the record evidence as a whole. See G. L. c. 30A, § 14(7) ("The court shall make the foregoing determinations upon consideration of the entire record").[5] As we uphold the board's determina-

---

[5]Here our review is hampered by the fact that the mother has not submitted a transcript from the board hearing as part of the record before us as required by Superior Court Standing Order 1-96. The mother contends that review of the transcript of the board hearing is unnecessary because any such transcript merely contains "primarily procedural discussions related to the extension of time for filing memorand[a]." In four of nine findings of fact by the hearing officer, however, he referenced testimony, although in two of those four findings, he cited exhibits as well. The two facts for which he cites only testimony are (1) that the daughter had been providing care to the mother prior to contract, "although not to the same extent" and (2) that the mother "received services from Bristol Elder Services three days per week." Neither of these facts appears to be contested. Nonetheless, as the Supreme Judicial Court found in *Covell* v. *Department of Social Servs.*, 439 Mass. 766, 782 (2003), the rule "[t]hat a transcript must be submitted to support a claim that the evidence was insufficient is not some hypertechnical requirement, but a reflection of the fact that resolution of such a claim requires the reviewing court to see the entirety of the evidence that was presented." As such, this ground may provide an independent basis on which we may affirm the board's decision. Because, as was the case in *Covell*, the available record before us sufficiently

tion that the transaction does not have an ascertainable fair market value, we need not address the alternative ground of whether the contract is "legally and reasonably enforceable."

*Requirement that contract have an ascertainable fair market value.* MassHealth regulations define fair market value as "an estimate of the value of a resource if sold at a prevailing price." 130 Code Mass. Regs. § 515.001 (2007). Yet here we cannot fairly estimate the value of the contract because it was self-contradictory, sketchy, and skewed in favor of the daughter's retention of the upfront payment regardless of the services provided.

As a preliminary matter, we note that the contract for personal services was entered into by the mother with the daughter, who "had been providing care to her mother prior to the contract as well" without compensation. There were also substantial discrepancies between the contract and the services actually provided. The language of the contract between the mother and the daughter specified certain services to be provided by the daughter, a full-time teacher, to the mother, including room and board and the preparation of three meals per day. Despite these contractual provisions, the record indicates that the mother provided her own lodging and her own breakfast. Furthermore, the record indicates that the mother received services from Bristol Elder Services three days per week. Given this information, we find that the hearing officer was justified in stating, "Even though I have found that the daughter had provided some of the tasks listed on the [c]ontract, it is unclear as to what value, if any these were to the [mother]."

The language and provisions of the contract are also important for what they omit. The contract does not quantify the number of hours per week to be worked by the daughter in caring for the mother, nor does it provide a likely duration for which the $20,000 lump-sum payment was contemplated. Because we evaluate the fair market value "based on the prevailing price at the time of transfer," the contract's "ascertainable fair-market

demonstrates that the board's decision was supported by substantial evidence, we need not depend on this rationale to decide this case. See *id.* at 783 (holding that department should prevail based upon inadequate record submitted by plaintiff but ultimately disposing of plaintiff's claims based upon sufficient evidence in underlying record).

value" is therefore highly uncertain. 130 Code Mass. Regs. § 515.001.

The contract provision that entitled the daughter to retain the mother's $20,000 lump-sum payment if the mother was unable to assist in her care or became a safety risk further obscures the fair market valuation of the contract. If the daughter elected to terminate the contract for these reasons, or if the mother died at any point in time following the execution of the contract, the daughter was entitled to retain the full $20,000 regardless of services performed to date. This could occur at any point in time, including on day one of the contract. Cf. *E.S.* v. *Division of Med. Assistance & Health Servs.*, 412 N.J. Sup. 340, 354 (N.J. App. Div. 2010) (court found contract not for fair market value, emphasizing that "should the 'resident' die, the caregiver is entitled to full payment [of $56,550 advance payment], regardless of services rendered" even if resident died on first day of contract). The contract also does not contain any language providing for a refund of any of the lump-sum payment to the mother under any circumstances, including the daughter's failure to provide the services for which the payment was made. Cf. *In the Matter of Barbato*, 65 A.D.3d 821 (N.Y. App. Div. 2009) (in the absence of refund provision, lump-sum payment for lifetime services found not for fair market value and reduced to value of nonduplicative services actually provided).

We therefore conclude that the board reasonably determined, based on substantial evidence, that the contract between the mother and the daughter here was not for fair market value and was therefore a disqualifying transfer. In so concluding, we are not in any way suggesting that all lump-sum prepaid contracts or all contracts between family members for personal services are disqualified. Our decision is limited to those contracts in which compensation does not reflect fair market value, as was the case here.

*Conclusion.* For the aforementioned reasons, we conclude that the mother has not demonstrated the invalidity of the administrative decision disqualifying the transfer.

*Judgment affirmed.*