NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-52                                           Appeals Court

D.F.[1]  vs.  DEPARTMENT OF DEVELOPMENTAL SERVICES.


No. 22-P-52.

Suffolk.     November 8, 2022. - April 27, 2023.

Present:  Neyman, Desmond, & Grant, JJ.


Developmentally Disabled Person.  Intellectually Disabled
     Person.  Department of Developmental Services.  Medicaid.
     Statute, Construction.  Administrative Law, Agency's
     interpretation of statute.



     Civil action commenced in the Superior Court Department on
July 23, 2020.

     The case was heard by Jackie A. Cowin, J., on motions for
judgment on the pleadings.


     Gerard J. Cedrone (David J. Zimmer also present) for the
plaintiff.
     Christine Fimognari, Assistant Attorney General, for the
defendant.
     Felicia H. Ellsworth & Charles C. Kelsh, for Harvard Law
School Project on Disability, amicus curiae, submitted a brief.
     Joshua M. Daniels, for families of other self-directed
program participants, amici curiae, submitted a brief.


---

[1] By his parent and legal guardian.

GRANT, J.  This case requires us to interpret G. L. c. 19B, § 19, colloquially referred to as the "real lives" statute, which was enacted in 2014 and has not yet been construed by an appellate court.[2]  The real lives statute allows individuals with intellectual or developmental disabilities who receive services through the Department of Developmental Services (department), to do so under a self-directed model that permits them to choose their own service providers and tailor supports to meet their needs within an individual budget set by the department.[3]  The plaintiff, D.F., contends that when the department set his individual budget for fiscal year 2020, it violated the real lives statute in three ways:  (1) by not basing his budget on his "assessed needs," a term included in the definition of an individual budget in G. L. c. 19B, § 19 (a); (2) by giving undue weight to his utilization of services during the prior fiscal year to set his budget for the upcoming year; and (3) by not

_____

[2] Rather unusually, G. L. c. 19B contains two sections numbered 19, enacted nearly simultaneously and effective on consecutive dates.  The one at issue was added by St. 2014, c. 255, § 1, and was effective November 4, 2014.  The other § 19, added by St. 2014, c. 234, § 1, as amended by St. 2014, c. 359, § 61, was effective November 3, 2014, pertains to fingerprint-based databases, and is not relevant here.

[3] The self-directed model of service delivery is also referred to in the statute as "self-determination," G. L. c. 19B, § 19 (e) (6), and by the department as "participant-directed."

ensuring that the value of his budget was "equivalent to the amount the department would have spent" if it had provided services to D.F. under the traditional model, as required by G. L. c. 19B, § 19 (e) (6). D.F. raised those claims without success in administrative proceedings and then in his G. L. c. 30A, § 14, appeal to the Superior Court, where the judge upheld the budget set by the department. He now appeals from that judgment. We conclude that the individual budget set by the department for D.F. was consistent with the statutory requirements. Thus, we affirm the judgment.[4]

Background. The controlling facts are not in dispute and are drawn from the administrative record.

1. D.F.'s receipt of services under the traditional model. D.F. is an adult with autism who has obtained services from the department since 2012. Beginning in that year, D.F. received day program support services that were funded by the department under the traditional model: the department directly paid D.F.'s service providers and then received partial reimbursement from Medicaid's home and community-based services waiver program. See G. L. c. 19B, § 18 (describing interagency funding of services to persons "with common needs for care and

---

[4] We acknowledge the amicus briefs of the Harvard Law School Project on Disability and the families of other self-directed program participants.

treatment"). In connection with those services, the department generated an individual support plan for D.F. which it updated annually. See 115 Code Mass. Regs. §§ 6.20 (2016), 6.21-6.25 (2012). For several years up to and including fiscal year 2019, D.F. attended a day program five days each week at 3L Place, Inc. (3L Place). The department paid 3L Place for those services and was partially reimbursed through Medicaid. Under the traditional model, the department's payments to 3L Place, and Medicaid's reimbursements to the department, were only for services that D.F. used; for days that D.F. did not attend, 3L Place was not paid.

2. <u>D.F.'s transition to receive services under the self-directed model</u>. In April 2019, D.F. notified the department that he wanted to transition to the self-directed model. He and the department agreed to make the change effective for fiscal year 2020, beginning July 1, 2019. That spring, the department updated D.F.'s individual support plan for fiscal year 2020, setting forth information such as D.F.'s activities at 3L Place and his progress and goals and noting his upcoming transition to the self-directed model.

In May 2019, the department approved a written plan of care (May 2019 plan of care) for D.F. for the upcoming fiscal year 2020. The May 2019 plan of care was required for the department to obtain Medicaid reimbursement under the home and community-

based waiver program.  See 42 U.S.C. § 1396n(c)(1).  As required by 42 C.F.R. §§ 441.300, 441.301(b), the May 2019 plan of care stated that, based on an assessment of D.F.'s health and welfare needs, thirty hours per week of community-based day supports from 3L Place constituted services that were needed to prevent his institutionalization.

As of July 1, 2019, the programmatic structure of 3L Place changed from a traditional, community-based day program to a pilot program that was not reimbursable by Medicaid.[5]  Under the self-directed model, D.F. chose to attend 3L Place's education and training institute pilot program, which was not licensed or certified by the department, see G. L. c. 19B, § 15, and cost a higher hourly rate than the 3L Place day program he had attended previously.  Unlike the traditional model, under which the department paid 3L Place only for services that D.F. used, the self-directed model required the department to make D.F.'s individual budget available to him to purchase services, supports, or goods.  See G. L. c. 19B, § 19 (i).  As a result, under the self-directed model 3L Place could be paid for services on days that D.F. did not attend the pilot program.

---

[5] From the record before us, it is not apparent whether the department was aware, when it approved the May 2019 plan of care, that the 3L Place pilot program that D.F. had chosen was not eligible for Medicaid reimbursement.

Because D.F. chose the self-directed model for fiscal year 2020, the real lives statute required the department to set an individual budget for him. See G. L. c. 19B, § 19 (e) (4). The department initially set the budget at $22,000, which was the amount of the department's contract with 3L Place for fiscal year 2019 under the traditional model. After a conference with D.F.'s guardian, the department adjusted the budget to take into account D.F.'s actual attendance at 3L Place during fiscal year 2019. As a result, the department increased the budget to $24,516, which was the amount the department had spent on D.F.'s services for fiscal year 2019. Because the pilot program was more expensive than the program that D.F. had attended under the traditional model, his individual budget set by the department covered his attendance at the 3L Place pilot program for only two days per week.

D.F. sought a fair hearing, contending that his individual budget should be set to reflect the thirty hours per week of day supports set forth in the May 2019 plan of care. D.F. argued that, computed at the $17.24 hourly rate that the department had been paying 3L Place under the traditional model, multiplied by fifty weeks per year, that amounted to $25,860 -- i.e., $1,344 more than the individual budget set by the department. He contended that his "assessed needs" for the purposes of the real lives statute, G. L. c. 19B, § 19 (a), were thirty hours per

week in a day program, as reflected in the May 2019 plan of care, and the department's basing his fiscal year 2020 budget on his "utilization" -- the value of the services he had actually used during fiscal year 2019 -- did not comply with the real lives statute.

Following a hearing, a department hearing officer made findings of fact and proposed conclusions of law, recommending that the commissioner of the department uphold her decision. The hearing officer found unpersuasive D.F.'s contention that the May 2019 plan of care for Medicaid reimbursement set forth his assessed needs, or that it was relevant to setting his individual budget under the self-directed model, because the 3L Place pilot program that he chose to attend would not be reimbursed by Medicaid. The hearing officer concluded that "while the statute provides individuals the ability to choose a more expensive service, the statute does not impose the additional financial burden on the Commonwealth." The hearing officer also concluded that "the [d]epartment's consideration and incorporation of [D.F.]'s prior utilization of his traditional day program supports in fiscal year 2019 is consistent with a rational interpretation of the statute." The commissioner issued a final decision on June 24, 2020, adopting the hearing officer's findings and recommended decision.

On appeal to the Superior Court pursuant to G. L. c. 30A, § 14, the parties filed cross motions for judgment on the pleadings. A judge allowed the department's motion and denied D.F.'s motion. For essentially the reasons articulated by the hearing officer and adopted by the commissioner, the judge concluded that the May 2019 plan of care was not relevant to the department's setting D.F.'s individual budget for fiscal year 2020 under the self-directed model. Moreover, the judge concluded that the real lives statute did not preclude the department from basing D.F.'s individual budget for fiscal year 2020 under the self-directed model on the amount that the department had spent during fiscal year 2019 to pay for D.F.'s services under the traditional model. The judge reasoned that "[t]he conclusion that what has met one's needs in the immediately preceding year will meet one's needs in the upcoming year is logical and fair, not arbitrary and capricious." Moreover, the judge noted that, as D.F. has experienced in the past, "[the department] will increase its funding when a participant uses more services than planned, within his assessed needs." Accordingly, the judge concluded that D.F. "does not identify how, if at all, [the department's] budget for [fiscal year 2020] did not meet his assessed needs. Without evidence that [the department's] calculation did not, actually, fail to

provide for his own assessed needs, [D.F.] cannot meet his burden of proof in this matter."

Discussion. 1. Standard of review. "Appellate review under G. L. c. 30A, § 14, is limited to determining whether the agency's decision was unsupported by substantial evidence, arbitrary and capricious, or otherwise based on an error of law" (citation omitted). Burke v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 90 Mass. App. Ct. 203, 205 (2016). "This standard of review is highly deferential to the agency on questions of fact and reasonable inferences drawn therefrom." Brookline v. Alston, 487 Mass. 278, 299 (2021) (Alston), quoting Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992). D.F., as appellant, bears the burden of proving that the administrative determination was invalid. See Forman v. Director of the Office of Medicaid, 79 Mass. App. Ct. 218, 221 (2011). In the context of this G. L. c. 30A, § 14, appeal, D.F. was "required to show that [his] substantial rights may have been prejudiced" by the department's actions. M.D. v. Department of Developmental Servs., 83 Mass. App. Ct. 463, 471 (2013).

D.F. raises issues of statutory construction of the real lives statute. "Questions of statutory interpretation . . . are questions of law and thus are reviewed de novo." DiMasi v. Secretary of the Commonwealth, 491 Mass. 186, 191 (2023). We

give "substantial deference" to a reasonable interpretation of a statute that is made by the administrative agency charged with its enforcement (citation omitted). Id. "We do not interpret regulatory statutes in a manner that imposes procedural requirements on an agency that are not clearly mandated by the statutory language." Molly A. v. Commissioner of the Dep't of Mental Retardation, 69 Mass. App. Ct. 267, 281 (2007). However, "[a]n incorrect interpretation of a statute by an administrative agency . . . is not entitled to deference" (citation omitted). DiMasi, supra.

A fundamental tenet of statutory construction is that the language of the statute "should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result" (citation omitted). DiMasi, 491 Mass. at 191. "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent (citation omitted)." City Council of Springfield v. Mayor of Springfield, 489 Mass. 184, 187 (2022). However, where statutory language is ambiguous, "familiar principles of statutory construction guide our interpretation" (citation omitted). Patel v. 7-Eleven, Inc., 489 Mass. 356, 362 (2022). In such circumstances, we may ascertain the intent of the Legislature from the language of the statute, "considered in connection with the cause of its enactment, the mischief or

imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated" (citation omitted). Id. at 362-363.

2. The real lives statute. In considering an appeal based upon issues of statutory interpretation, we set out the terms of the statute at issue in "some detail." J.W. v. Department of Developmental Servs., 86 Mass. App. Ct. 374, 376 (2014). The real lives statute requires the department to promulgate regulations implementing it, G. L. c. 19B, § 19 (n), but the department has yet to do so.[6] Absent any regulatory guidance on the process for setting an individual budget under the self-directed model, our focus is on the language of the statute.

The real lives statute requires the department to "facilitate and assist in the preparation of a person-centered plan, individual support plan and individual budget for each participant." G. L. c. 19B, § 19 (e) (1). The statute then defines each of those three documents. First, a "person-centered plan" is "a plan of service for a participant who elects to participate in self-determination." G. L. c. 19B, § 19 (a). Although the hearing officer equated a person-centered plan with an individual support plan, the statute

---

[6] During and after oral argument, the parties informed us that regulations have been drafted and are in the public comment stage.

separately defines the two terms and provides that, once created, the person-centered plan is to be incorporated into the individual support plan.  G. L. c. 19B, § 19 (a).

Second, the real lives statute defines an "individual support plan" as meaning the same as in the existing regulations applicable under the traditional model.  G. L. c. 19B, § 19 (a), citing 115 Code Mass. Regs. § 6.20.  As in effect at the time of D.F.'s transition to the self-directed model, those regulations described the process for generating an individual support plan, and directed that it be developed and updated annually by a team that included the developmentally disabled person and his or her guardian, as well as employees of the department.  See 115 Code Mass. Regs. §§ 6.20-6.25.

Third, as discussed in more detail below, an "individual budget" is "an allocation of federal and state funds based upon the participant's assessed needs."  G. L. c. 19B, § 19 (a).  As to the spending of the money in the budget, "[t]he amount of the individual budget shall be available to the participant each year for the purchase of self-determination services, supports or goods."  G. L. c. 19B, § 19 (i).  The department may recalculate an individual budget based on the needs of the participant, or adjust it if the participant does not use all funds in the budget within the designated year.  See id.

3. _Individual budget_. D.F. contends that the department violated the statute by setting his individual budget for fiscal year 2020 without adequately considering his "assessed needs," as that term is used in the definition of individual budget in G. L. c. 19B, § 19 (a). He also argues that in setting his individual budget for fiscal year 2020, the department gave undue weight to his utilization of services in the previous year. Finally, D.F. argues that the department violated G. L. c. 19B, § 19 (e) (6), by not setting his individual budget so that its value was "equivalent" to the amount the department would have spent if he had continued to receive services under the traditional model.

a. _Based on assessed needs_. D.F. argues that because the budget set by the department fell short of the amount projected in his May 2019 plan of care, it was not based on his "assessed needs" as that phrase is used in the real lives statute, G. L. c. 19B, § 19 (a). Section 19 (a) defines an "individual budget" as

> "an allocation of federal and state funds based upon the participant's assessed needs, as determined by the department in consultation with the participant, the participant's individual support plan team and chosen planning team, used to facilitate self-determination and to purchase services, supports or goods identified or referenced in the person-centered plan" (emphasis added).

D.F. notes that the May 2019 plan of care form contained the following preprinted language:

> "This Plan of Care is prepared to satisfy one of the conditions of the Commonwealth to receive federal reimbursement under the Massachusetts [home and community-based services] [w]aiver for the Department of Developmental Services. [Department] waiver services identified in . . . this Plan of Care are based on an <u>assessment</u> of the individual's health and welfare needs and constitute services that are <u>needed</u> to prevent institutionalization" (emphases added).

Because of the similarity between the words emphasized above and the phrase "assessed needs" in the definition of individual budget in the real lives statute, D.F. contends that his assessed needs for the purposes of that statute were what was set forth in his May 2019 plan of care:  thirty hours per week of community-based day supports.[7]  The department counters that D.F.'s assessed needs for the purposes of the real lives statute were based on D.F.'s initial assessment in 2012, updated annually in his individual support plans, and those assessed needs were for community-based day supports.

The real lives statute does not define "assessed needs." We note that those words come immediately after the phrase "an allocation of federal and state funds."  G. L. c. 19B, § 19 (<u>a</u>). We interpret that to mean that the Legislature intended that the

---

[7] D.F. argues that the individual budget set by the department fell $1,344 short of the amount calculated from the number of hours and the hourly rate set forth in his May 2019 plan of care.  He does not argue that the phrase "based upon the participant's assessed needs" in the definition of an individual budget, G. L. c. 19B, § 19 (<u>a</u>), meant that the budget was required to satisfy or fulfill all of his assessed needs.  Thus we do not reach that issue.

assessed needs on which the budget was based were those that met both Federal and State funding requirements. Indeed, § 19 (j) of the real lives statute provides that "[t]he self-determination option established under this section shall be contingent upon federal financial participation," and requires the department to promulgate regulations that "seek to maximize federal financial participation in, or funding or reimbursement for, self-determination." G. L. c. 19B, § 19 (j).[8]

We also read the definition of an individual budget in conjunction with two sections of the statute about setting the budget. First, G. L. c. 19B, § 19 (e) (4), requires the department to "set individual budgets annually in a fair, equitable and transparent manner in consultation with the participant and the participant's individual support plan." That requirement that the department consult the participant's individual support plan tends to show that the Legislature intended that a participant's assessed needs were to be established after considering the information set forth in the individual support plan.[9] Here, the hearing officer found that

---

[8] The department does not argue that because D.F. chose a program that was ineligible for Medicaid reimbursement, G. L. c. 19B, § 19 (j), precluded him from using the self-directed model. Thus we do not reach that issue.

[9] As mentioned above, G. L. c. 19B, § 19 (a), defines an individual support plan by reference to the preexisting regulation, 115 Code Mass. Regs. § 6.20. That regulation

D.F. "did not offer evidence of an assessed need that the [department]-proposed self-directed budget fails to meet." We accord substantial deference to that factual finding. See Alston, 487 Mass. at 299.

Second, G. L. c. 19B, § 19 (i), provides that "[t]he department, in consultation with the participant and the participant's chosen planning team, shall determine the initial and any revised individual budget for the participant," and "[a]n individual budget may be recalculated by the department based on the needs of the participant." That the department "may" recalculate an individual budget based on the participant's actual "needs" cuts against D.F.'s argument that we should read a mandate into the phrase "based upon the participant's assessed needs" in the definition of an individual budget, G. L. c. 19B, § 19 (a). See Perez v. Department of State Police, 491 Mass. 474, 483 (2023).

To support his argument that his "assessed needs" for the purposes of his individual budget should be what was set forth in his May 2019 plan of care, D.F. points to the Federal regulation about modification of a Medicaid plan of care, 42

_____

defines "individual support planning" as "an on-going process of establishing goals . . . that may be related to the individual's vision statement . . . and of identifying supports and strategies that will promote achievement of those goals." 115 Code Mass. Regs. § 6.20(2)(b).

C.F.R. § 441.301(c)(2)(xiii)(A), which requires "[d]ocument[ation]" of a "specific and individualized assessed need" in order for the modification to be eligible for Medicaid reimbursement.[10]  He maintains that because the department approved his May 2019 plan of care which documented his "specific and individualized assessed need" under that Federal regulation, that plan of care was also relevant to his "assessed needs" within the definition of an individual budget in G. L. c. 19B, § 19 (a).  The argument is unavailing, for two reasons.

First, the real lives statute does not mention the Medicaid plan of care or the Federal statute and regulation governing it. See 42 U.S.C. § 1396n(c)(1); 42 C.F.R. § 441.301(b).  Instead, as discussed above, the Legislature referred to the individual support plan as defined in 115 Code Mass. Regs. § 6.20.  Based on that regulation, and as mentioned above, D.F.'s individual support plan for fiscal year 2020 set forth information such as his activities in his day program and his progress and goals. It did not include projections for the number of hours he would spend in that program or the cost.  Where the real lives statute requires the department to set the individual budget in

---

[10] For reasons not apparent on this record, in fiscal year 2020 the 3L Place pilot program was not eligible for Medicaid reimbursement.  In those circumstances, we cannot assume that the pilot program would have met a "specific and individualized assessed need" of D.F. within the meaning of 42 C.F.R. § 441.301(c)(2)(xiii)(A).

consultation with the individual support plan, G. L. c. 19B, § 19 (e) (4), we will not inject into the statute a requirement that the department also consider the Medicaid plan of care. "We do not read into the statute a provision which the Legislature did not see fit to put there, nor add words that the Legislature had an option to, but chose not to include." Commissioner of Correction v. Superior Court Dep't of the Trial Court for the County of Worcester, 446 Mass. 123, 126 (2006).

Second, because Medicaid reimbursed the department only for services that D.F. actually used, the May 2019 plan of care did not establish a budget. Rather, it established a maximum amount of services for which Medicaid would reimburse the department: thirty hours per week of day support services. The hearing officer credited the testimony of the department's regional director that in her thirty-nine years working for the department, no participant had ever utilized the maximum amount allocated in a Medicaid plan of care, typically because of issues such as vacation or illness. We defer to that credibility finding. See Alston, 487 Mass. at 299.

To the extent that the meaning of the words "based upon the participant's assessed needs" in G. L. c. 19B, § 19 (a), could be considered ambiguous, we look to the legislative history of the statute. See Crossing Over, Inc. v. Fitchburg, 98 Mass. App. Ct. 822, 832 (2020). A prior version of the bill would

have defined an "individual budget" as "a dollar amount for goods, services and supports specified in the person-centered plan that is under the control and direction of the individual." 2013 House Doc. No. 4237. That bill was referred to the House Committee on Ways and Means, which recommended amendments. See 2014 House J. 1735. Ultimately the definition of an individual budget was amended to the phrasing at issue here. Additional amendments included the language that became G. L. c. 19B, § 19 (j), mentioned above, which makes self-determination contingent on Federal financial participation and requires the department to maximize Federal funding for individuals who choose that model. The Legislature's focus on controlling the costs of self-determination in enacting the real lives statute, including in the final language defining an individual budget, cuts against the broad interpretation of "assessed needs" that D.F. proposes.

We note that D.F. does not contend that unusual circumstances caused him to miss attending the 3L Place day program in fiscal year 2019, or that if he had continued in a traditional program in fiscal year 2020, he would have attended it for thirty hours per week throughout that year. If illness, unavailability of services, significant increases in costs, or other unusual issues had rendered what the department spent in fiscal year 2019 a poor comparison, the department would have

had to take those factors into consideration when setting D.F.'s individual budget for fiscal year 2020.  We do agree that looking only at what was spent, without considering any extraneous factors, would not do justice to the intent of the statute.

b.  Utilization.  D.F. also argues that the department improperly considered, or at least gave undue weight to, his utilization of services in fiscal year 2019 as an indicator of his assessed needs for fiscal year 2020.  The hearing officer interpreted the term "utilization" to refer to "an analysis of the total services and supports delivered or rendered to [D.F.] at his traditional day program."  We cannot agree with D.F.'s premise that considering his actual utilization of services during the prior year is not permitted by the real lives statute, or divorces his individual budget from his assessed needs.  Indeed, G. L. c. 19B, § 19 (i), anticipates that the department will consider a participant's utilization of services in setting an individual budget.  That section provides:  "Funds not spent by the annual individual budget shall revert back to the department.  The department shall consider adjusting a participant's individual budget when a participant does not utilize all funds in the participant's individual budget within the designated year."  G. L. c. 19B, § 19 (i).  For those reasons, we agree with the Superior Court judge that the

department's considering the number of hours that D.F. actually used in fiscal year 2019 when setting his individual budget for 2020 was "logical and fair, not arbitrary and capricious."

c. Value equivalent to amount department would have spent for services under traditional model. D.F. also argues that the individual budget that the department set for him under the self-directed model was not "equivalent" to what it would have spent under the traditional model, as required by the real lives statute, G. L. c. 19B, § 19 (e) (6). That section requires that the department

> "ensure that the value of a participant's individual budget is equivalent to the amount the department would have spent providing services, supports or goods to the participant if the participant had chosen to receive services, supports and goods through a traditional service model supported by the department" (emphases added).

G. L. c. 19B, § 19 (e) (6).

The parties focus on the word "equivalent" in that section. D.F. contends that it means "equal in value or amount." See Commonwealth v. Ray, 435 Mass. 249, 252 (2001). The department contends that its meaning is ambiguous, and it could mean either equal in value or equal in effect. Cf. Edwards, petitioner, 464 Mass. 454, 462 (2013) (under G. L. c. 261, § 27F, when indigent criminal defendant seeks funds for expert services, judge may order alternative, lower cost services that are "substantially equivalent").

We focus instead on the words "would have spent providing services." D.F. argues that his fiscal year 2020 individual budget under the self-directed model should equal the amount of money the department would have paid if it had provided all of the services listed in the May 2019 plan of care, which totaled $25,860. We reject D.F.'s argument that "would have spent" means that his individual budget should have been set at what the department and Medicaid would have been willing to spend if he had maximized his services projected for fiscal year 2020. We agree with the department that, even if we were to accept D.F.'s definition of the word "equivalent," the department met that definition here by setting his fiscal year 2020 individual budget at an amount precisely equal to the amount it had spent for D.F.'s services in fiscal year 2019.

Because under the traditional model the department paid for only those services or programs that D.F. actually used, but under the self-directed model D.F. may choose to spend his individual budget on a program and then not attend it on some days, a precise comparison of the funding under the two models may not be possible. As the hearing officer put it, "To set [D.F.]'s budget based on the maximum utilization identified in his defunct [plan of care] would not be fair to individuals using the traditional fee-for-service modality, or to persons who don't have (or who have never had) a [plan of care]." We

agree. In setting D.F.'s individual budget, the real lives statute allowed the department to cap the budget at what it would have spent for services delivered under the traditional model. See G. L. c. 19B, § 19 (e) (6). As noted by the hearing officer, the statute does not require the department to pay for a more expensive program.

Indeed, in determining whether the value of D.F.'s individual budget is "equivalent" to what the department would have spent providing him services under a traditional model, G. L. c. 19B, § 19 (e) (6), it would be foolhardy for the department to ignore what it in fact spent in the prior year for services under the traditional model. D.F.'s actual use of services in fiscal year 2019 did not equal the thirty hours per week projected in his plan of care during that year, and D.F. did not show a likelihood that this would change in fiscal year 2020. The department did not have to ignore that fact in setting D.F.'s individual budget.

Conclusion. We conclude that D.F. has not met his burden to show that the department's administrative determination in setting his individual budget for fiscal year 2020 failed to comply with the real lives statute. See Forman, 79 Mass. App. Ct. at 221.

Judgment affirmed.